# IN THE SUPREME COURT OF TENNESSEE
# AT NASHVILLE
June 2, 2010 Session Heard at Cookeville[1]


# STATE OF TENNESSEE v. CURTIS LEE MAJORS


**Appeal by Permission from the Court of Criminal Appeals**
**Criminal Court for Davidson County**
**No. 2006-D-3084      Cheryl Blackburn, Judge**

---

**No. M2007-01911-SC-R11-CD - Filed September 3, 2010**

---

We accepted this case to determine whether, under Tennessee Code Annotated section 39-16-503(a)(1), the proof required to convict the defendant of tampering with evidence is sufficient where the "thing" destroyed during the course of an investigation is not specifically identified. On the facts of this case, we hold that the evidence is sufficient. The judgment of the trial court is affirmed.

## Tenn. R. App. P. 11 Appeal by Permission; Judgment of the Court of Criminal Appeals Affirmed

CORNELIA A. CLARK, J., delivered the opinion of the Court, in which JANICE M. HOLDER, C.J., and GARY R. WADE, WILLIAM C. KOCH, JR., and SHARON G. LEE, JJ., joined.

J. David Wicker, Jr., Nashville, Tennessee, for the appellant, Curtis Lee Majors.

Robert E. Cooper, Jr., Attorney General and Reporter; Benjamin A. Ball, Assistant Attorney General; Victor S. (Torry) Johnson, III, District Attorney General; and Robert E. McGuire, Assistant Attorney General, for the appellee, State of Tennessee.

---

[1] Oral argument was presented at Derryberry Hall on the campus of Tennessee Technological University in Cookeville, Putnam County, Tennessee, as a part of the **S**upreme **C**ourt **A**dvancing **L**egal **E**ducation for **S**tudents (S.C.A.L.E.S.) project.

# OPINION

## Facts

Curtis Majors ("Defendant") was originally indicted on February 7, 2006. The grand jury issued a superseding indictment on November 16, 2006, charging Defendant with one count of possession with intent to sell or deliver less than 0.5 grams of a substance containing cocaine within one thousand feet of a school zone[2] and one count of tampering with evidence. Defendant pled not guilty to both counts.

Prior to trial, Defendant moved to dismiss the indictment for tampering with evidence, arguing that, in its failure to specify the evidence with which Defendant had tampered, the superseding indictment was too vague to satisfy the requirements of federal constitutional and Tennessee statutory law. After hearing oral argument on April 3, 2007, the trial court denied the motion.[3]

The following facts were adduced at trial. At approximately 9:00 P.M. on October 12, 2005, seven officers of a Metropolitan Nashville Police Department crime suppression unit executed a search warrant for an apartment located at 621 Charles E. Davis Boulevard. Officer William Traughber, the affiant for the search warrant, led the unit members to the apartment door. As the officers approached the door, a male opened the door and was apprehended inside the apartment by Officer Traughber. The officers all yelled "search warrant" and "police" as they entered the apartment. Each officer wore a raid vest bearing the department logo, a badge, and the word "police" in large lettering.

Officer Traughber testified that, right inside the door, there was a flight of steps leading up into the kitchen. When Officer Traughber entered the apartment, he could see Defendant seated at the kitchen table.[4] Officer Traughber testified that Defendant

---

[2] At trial, the parties stipulated to the accuracy of a map that the State introduced into evidence, showing that the location for the search warrant executed in this case was inside a thousand-foot buffer around Cameron Middle School.

[3] In the same hearing, the court conducted an evidentiary hearing on Defendant's motion to suppress statements made to Officer William Traughber after the administration of the Miranda warnings. The trial court ultimately denied the motion to suppress. That ruling has not been appealed and is not at issue in this appeal.

[4] Defendant's counsel cross-examined Officer Traughber regarding his prior testimony at the October
(continued...)

"absolutely" saw the members of the crime suppression unit and heard them yelling "police." Defendant then "t[ook] off running" from the kitchen table and disappeared from view. Officer Traughber saw Officers Ron Black and Tim Szymanski pursue Defendant as he left the kitchen. Officer Traughber testified that he then heard the "instantaneous" sound of a toilet flushing.

Officer Black testified that he could not see Defendant when he first entered the apartment but went upstairs because he heard a "commotion" in that area. Officer Black encountered Defendant coming out of the bathroom and took Defendant into custody. The toilet had just been flushed, water was still spraying in the bowl, but Defendant was completely dressed. Officer Black found no one else around Defendant when he took Defendant into custody just outside the bathroom.

Officer Traughber estimated that the bathroom was located about fifteen to twenty feet from the top of the steps. By the time that Officer Traughber climbed the steps, Defendant had been apprehended at the bathroom door. The commode's water tank was still filling up, and Defendant was wearing all of his clothes. Officer Traughber observed water splattered on the toilet seat.

After apprehending Defendant, the man who opened the door, and two other individuals in the apartment, the officers searched the premises. Officers Traughber and Black both testified that no drug residue or paraphernalia were observed in or around the toilet. Furthermore, the officers did not attempt to see if any drug-related evidence had been lodged in the toilet. Nor did they locate any drug paraphernalia or weapons on Defendant's person.

At the kitchen table, however, Officer Traughber found a small plate with a white powdery substance on it and a rolled-up dollar bill next to it. The powder field-tested positive for cocaine. This powder was collected and sent to the Tennessee Bureau of Investigation for further testing. At trial, Agent John Scott, a TBI forensic scientist, testified that he tested the powder and determined that it consisted of 0.04 grams of cocaine. The officers also recovered digital scales from a kitchen drawer, along with crack pipes and

---

[4](...continued)
2005 preliminary hearing concerning whether he saw Defendant at the kitchen table. The preliminary hearing transcript is not part of this record. Testimony from that transcript was admissible only for the purpose of impeaching Officer Traughber's credibility, see State v. Mayo, 735 S.W.2d 811, 814 (Tenn. Crim. App. 1987), and it does not preclude the jury from finding that Officer Traughber's testimony at trial was credible.

Chore Boy (a copper scouring pad frequently used as a filter for smoking crack cocaine) on the persons of other individuals arrested inside the apartment.

Defendant was read his rights pursuant to <u>Miranda v. Arizona</u>, 384 U.S. 436, 444-45 (1966). Defendant then agreed to speak with Officer Traughber. Defendant admitted that the cocaine on the kitchen table belonged to him and that he snorted cocaine. When Officer Traughber asked Defendant what he flushed down the toilet, Defendant did not answer the question directly but repeatedly stated, "I snort."

Lieutenant William MacKall testified as an expert in narcotics investigations. Based on his experience executing more than two thousand search warrants, Lieutenant MacKall testified that, when police enter a residence, the subjects of the search warrants often move around attempting to destroy evidence. Specifically, he testified that "people typically run to the bathroom and throw the product in the toilet and flush it." He testified that powder cocaine dissolves in water such that he has only been able to recover powder cocaine left on the rim of the toilet seat. Furthermore, if evidence is actually flushed down the toilet (as opposed to getting clogged in the drain or not going under in the first place), Lieutenant MacKall testified that he has never been able to recover that evidence, even by removing the toilet from the floor.

At the conclusion of the proof, the trial court instructed the jury. Concerning the second count for tampering with evidence, the trial court orally gave the following instruction:

> For you to find the defendant guilty of this offense the State must have proven beyond a reasonable doubt the existence of the following essential elements: (1) that the defendant knew an investigation or official proceeding was pending or in progress and (2) that the defendant altered, destroyed, or concealed any record with intent to impair its viredity (phonetic),[5] legibility, or availability as evidence in the investigation or official proceeding. And it also needs to be record or any thing. It should be thing. And I think it's also any document. I am going to change this.

The record does not contain the written charge that the trial court actually submitted to the jury.

The jury ultimately convicted Defendant of simple possession of cocaine, a Class A misdemeanor, and tampering with evidence, a Class C felony. Following the convictions,

---

[5] The word "verity" was apparently not understood by the court reporter.

Defendant filed a motion for judgment of acquittal, see Tenn. R. Crim. P. 29(c), and two motions for new trial, see Tenn. R. Crim. P. 33.[6]  Among other issues, Defendant's motions argued that the evidence supporting the tampering conviction was insufficient to establish the identity of the "thing" that Defendant allegedly destroyed; the trial court should have granted the prior motion to dismiss the tampering count from the indictment; and the jury instruction for tampering failed to specify the "thing" that Defendant allegedly destroyed. The trial court denied all of these motions.  The trial court then determined that Defendant was a Range III, persistent offender and sentenced him to fifteen years for tampering with evidence and eleven months, twenty-nine days for simple possession, to be served concurrently.

Defendant appealed only his conviction and sentence for tampering with evidence, raising three issues to the Court of Criminal Appeals.  First, Defendant challenged the sufficiency of the evidence to establish either his knowledge of an investigation pending or in progress or the identity of the "thing" with which Defendant tampered.[7]  Second, Defendant challenged the jury instruction for failing to name the "thing" that was destroyed. Finally, Defendant challenged his sentence because the trial court purportedly did not give proper consideration to a mitigating factor.  A split panel of the Court of Criminal Appeals affirmed Defendant's conviction, with one judge dissenting on the sufficiency of the evidence.  See State v. Majors, No. M2007-01911-CCA-R3-CD, 2009 WL 1422951 (Tenn. Crim. App. May 21, 2009).

This appeal followed.  In this Court Defendant raises the issues of (1) sufficiency of the evidence, (2) error in the jury instructions, and (3) failure to grant the motion to dismiss the indictment, all related to the State's inability to identify the "thing" Defendant flushed down the toilet.[8]

---

[6] The difference between Defendant's two Rule 33 motions is that one motion specifically invoked subsection (d), which allows the trial court to grant a new trial following a guilty verdict if the trial court "disagrees with the jury about the weight of the evidence."  Tenn. R. Crim. P. 33(d); see also State v. Dankworth, 919 S.W.2d 52, 56 (Tenn. Crim. App. 1995) (explaining the function of the trial court in setting aside a verdict under this codification of the "thirteenth juror rule").

[7] Defendant's brief in the Court of Criminal Appeals couched this argument as two separate issues—first, that the evidence was insufficient to support the conviction and, second, that the trial court erred in denying Defendant's motion for judgment of acquittal.  Their substance, however, is essentially overlapping, and we summarize them as one.

[8] Before this Court Defendant does not challenge his conviction for misdemeanor possession of cocaine or his sentence for either offense.

## Analysis

### I. Sufficiency of the Evidence

#### A. Standard of Review

When evaluating the sufficiency of the evidence, we must determine whether "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979). In making this determination, we afford the prosecution the strongest legitimate view of the evidence as well as all reasonable and legitimate inferences which may be drawn therefrom. State v. Bland, 958 S.W.2d 651, 659 (Tenn. 1997). Questions concerning the credibility of the witnesses, the weight to be given the evidence, and factual issues raised by the evidence are resolved by the trier of fact. Id. Because a verdict of guilt removes the presumption of innocence and imposes a presumption of guilt, the defendant upon conviction bears the burden of showing why the evidence is insufficient to support the verdict. State v. Rice, 184 S.W.3d 646, 661 (Tenn. 2006); State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982). This standard is identical whether the conviction is predicated on direct or circumstantial evidence. State v. Casper, 297 S.W.3d 676, 683 (Tenn. 2009); State v. Brown, 551 S.W.2d 329, 331 (Tenn. 1977).

In the absence of direct evidence, a criminal offense may be established entirely by circumstantial evidence. Duchac v. State, 505 S.W.2d 237, 241 (Tenn. 1973); Marable v. State, 313 S.W.2d 451, 456-58 (Tenn. 1958). We have traditionally held, however, that, before the trier of fact convicts a defendant on circumstantial evidence alone, the evidence "must be so strong and cogent as to exclude every other reasonable hypothesis save the guilt of the defendant, and that beyond a reasonable doubt." State v. Crawford, 470 S.W.2d 610, 612 (Tenn. 1971). A "web of guilt must be woven around the defendant from which he cannot escape and from which facts and circumstances the jury could draw no other reasonable inferences save the guilt of the defendant beyond a reasonable doubt." Id. at 613. The weight of circumstantial evidence, the inferences to draw from such evidence, and the extent to which that evidence is consistent with guilt are all questions for the jury. State v. James, — S.W.3d —, 2010 WL 2539649, at *11 (Tenn. 2010); Smith v. State, 327 S.W.2d 308, 317 (Tenn. 1959).

B. Elements of Tampering with Evidence

Tennessee's criminal code provides as follows:

> **Tampering with or fabricating evidence**. — (a) It is unlawful for any person, knowing that an investigation or official proceeding is pending or in progress, to:
> (1) Alter, destroy, or conceal any record, document or thing with intent to impair its verity, legibility, or availability as evidence in the investigation or official proceeding[.]

Tenn. Code Ann. § 39-16-503(a)(1) (2006). Thus, the felony offense of tampering with evidence consists of three elements: (1) an ongoing investigation about which the accused knows, (2) the accused alters, destroys, or conceals some "record, document or thing," and (3) the accused tampers with the "record, document or thing" in order to impair its use as evidence in the investigation. Here, Defendant maintains that the evidence was insufficient in two respects. First, Defendant contends that the evidence did not establish his knowledge of an investigation that was pending or in progress. Second, Defendant argues that the evidence did not establish the identity of the precise "thing" that defendant altered, concealed, or destroyed, or even that he altered, concealed, or destroyed any "thing" at all.

*Defendant's Knowledge of an Investigation*

Officer Traughber testified that the members of the crime suppression unit all yelled "police" and "search warrant" as they entered the apartment. The officers were wearing raid vests with the police department logo, a badge, and the word "police" in large lettering. Defendant "absolutely" saw the officers and heard their yelling before he "t[ook] off running" from the kitchen table. The officers' exclamations and attire, coupled with Defendant's response to hearing and seeing the officers, are sufficient for a reasonable trier of fact to conclude that Defendant knew an investigation was in progress when he got up from the kitchen table. See State v. Logan, 973 S.W.2d 279, 282 (Tenn. Crim. App. 1998).

Nonetheless, Defendant maintains that he did not know an investigation was in progress because the members of the crime suppression unit purportedly did not comply with the "knock and announce" rule when they executed the search warrant. Under this rule, "a law enforcement officer who is charged with the execution of a search warrant must give: (1) notice of his authority; and (2) the purpose of his presence at the structure to be searched." State v. Perry, 178 S.W.3d 739, 745 (Tenn. Crim. App. 2005) (discussing Tenn. R. Crim. P. 41(e)). Under federal law, the "knock and announce" procedure is one factor in determining the reasonableness of a search and seizure, see Wilson v. Arkansas, 514 U.S.

927, 934 (1995), and, except in certain exigent circumstances, failure to comply with the rule in Tennessee is grounds for excluding any evidence seized under the search warrant, <u>see</u> <u>State v. Curtis</u>, 964 S.W.2d 604, 609 (Tenn. Crim. App. 1997).

The Court of Criminal Appeals rejected Defendant's argument based on the knock and announce rule. The intermediate appellate court began by reasoning that the rule is typically cited for the proposition that police seized evidence in violation of the Fourth Amendment, but Defendant never filed a motion to suppress the evidence that the officers collected from the apartment. <u>Majors</u>, 2009 WL 1422951, at *4. It also noted that, under federal law, a majority of the federal circuit courts of appeal had concluded that police entry through an open door does not violate the rule. <u>Id.</u> Finally, it concluded that, setting aside the knock and announce issue, the evidence established the fact of Defendant's awareness of an investigation for purposes of the evidence tampering statute. <u>Id.</u>

We agree with the Court of Criminal Appeals' resolution of this issue. We hold that the evidence is sufficient to establish that Defendant had knowledge of an investigation in progress when he rushed to the bathroom and flushed the toilet.

*Identification of "Thing" Tampered With*

We turn now to the question of whether the language of the statute requires the State to establish the exact "thing" with which the accused allegedly tampered. The provisions of the criminal code are to be "construed according to the fair import of their terms." Tenn. Code Ann. § 39-11-104 (2006). This construction requires that we give "[t]he words of the statute . . . their ordinary and natural meaning," and we refer to dictionary definitions where appropriate. <u>State v. Williams</u>, 690 S.W.2d 517, 529 (Tenn. 1985); <u>see also</u> <u>Logan</u>, 973 S.W.2d at 282.

"Thing" means "an object or entity not precisely designated or capable of being designated." <u>Webster's Ninth New Collegiate Dictionary</u> 1226 (1986). Therefore, it is a vague word by definition. Consistent with the ordinary and natural meaning of "thing," our evidence tampering statute makes no attempt to define it more precisely. In using the word "thing," the statute creates criminal liability for tampering with any object or entity, even if it is not capable of precise designation.

The rest of the statutory language supports this broad, generic construction of the word "thing." As our Court of Criminal Appeals has previously explained, "'[d]estroy' is a verb that means to ruin or put out of existence. For something to be destroyed within the context of T.C.A. § 39-16-503, its evidentiary value must be ruined." <u>Logan</u>, 973 S.W.2d at 282 (citations omitted). Similarly, "conceal" is a verb meaning "to prevent disclosure or

recognition of" or "to place out of sight." Webster's Ninth New Collegiate Dictionary 271 (1986). The verb "alter" means "to make different without changing into something else." Id. Furthermore, the statute additionally requires that the tampering of a thing take place "with intent to impair its . . . availability as evidence." Tenn. Code Ann. § 39-16-503(a)(1). Where a person ruins, puts out of existence, prevents disclosure of, places out of sight, or makes different some "thing" and thereby carries out the person's intent to keep the "thing" from being available as evidence, then a person may succeed in getting rid of the "thing" altogether. In such cases, the State may be unable not just to recover the "thing" but also to identify exactly what "thing" was tampered with. Yet, this is the precise situation in which the statute imposes criminal liability.

If the legislature had wanted to predicate liability for evidence tampering on the precise identification of the "thing," it could have done so. Indeed, the criminal code contains very precise language in a number of other statutes, including various tampering statutes. For example, the road construction tampering statute prohibits, among other things, the intentional destruction or alteration on any state road or highway of letters and figures on a "detour sign," "warning sign," "barricade," or "fence"—all defined within the section. Tenn. Code Ann. § 39-17-108(a) & (b)(1)-(2) (2006). Elsewhere, the Code makes it a criminal offense "to knowingly damage, destroy, remove or otherwise tamper with a residential mailbox or other container such person knows or reasonably should know is used for the receipt and deposit of United States mail." Id. § 39-14-412(a) (2006). Still another provision prohibits influencing the winning of a prize by "tampering with lottery equipment or materials." Id. § 39-17-607 (2006). Indeed, in the section immediately following the provision at issue in this case, the Code prohibits the intentional destruction or concealment of a "governmental record," a term expressly defined elsewhere. See id. §§ 39-11-106(15), 39-16-504 (2006 & Supp. 2009). These examples show that, when the legislature wishes to be specific in identifying the prohibited target of a defendant's tampering, the Code uses precise language frequently accompanied by specific definitions. In the statute at issue here, however, the legislature proscribed the alteration, destruction, or concealment of a "thing"—a term for an object or entity not precisely designated and perhaps not even capable of being designated.

Based on the language of the statute and our comparative analysis of other criminal code sections, we hold that, in order to obtain a conviction for tampering with a "thing" of evidence, the State is not required to identify the specific object or entity that the defendant altered, destroyed, or concealed with the intent to impair its verity, legibility, or availability as evidence in an investigation or official proceeding. Instead, the statute only requires that the State establish beyond a reasonable doubt that the defendant altered, destroyed, or concealed some evidentiary "thing," even if it is not capable of precise identification. See Vaughn v. State, 33 S.W.3d 901, 903-04 (Tex. App. 2000) (holding that, where the

prosecution could not positively prove what object the defendant had flushed down the toilet, the proof was factually and legally sufficient to sustain conviction for evidence tampering under a similarly worded statute).[9]

In this case Defendant argues that the proof is insufficient to establish that he altered, concealed, or destroyed any "thing" at all. The State, while conceding that the evidence to support Defendant's tampering conviction is entirely circumstantial, argues that the only reasonable inference is that Defendant flushed the toilet to alter, destroy, or conceal some "thing" to prevent its availability as evidence in a criminal investigation. The Court of Criminal Appeals concluded that the evidence was sufficient to support the conviction. We agree.

Affording the prosecution the strongest legitimate view of the evidence and all reasonable and legitimate inferences to be drawn therefrom, the facts adduced at trial established that, once members of the crime suppression unit entered the apartment shouting "police" and "search warrant," Defendant got up from the kitchen table and "t[ook] off running" into the interior of the apartment. After Defendant disappeared the "instantaneous" sound of a flushing commode was heard. Heading directly upstairs upon entering the apartment, Officer Black confronted Defendant as Defendant came out of the bathroom, while water was still spraying in the toilet bowl. Officer Black found no one else around Defendant when he arrested Defendant. The only reasonable inference to be drawn from this evidence is that Defendant was the person who flushed the commode.

The purpose of flushing a commode is to dispose of the contents in the toilet bowl. While those contents ordinarily consist of human waste, the evidence in this case compels a different inference. Officer Traughber heard the "instantaneous" sound of a flushing commode after Defendant got up from the kitchen table and disappeared from view. As set forth above, Defendant ran for the bathroom with the knowledge that an investigation was pending. When Officer Black apprehended Defendant at the bathroom entrance, Defendant was completely dressed, even as water was still spraying in the toilet bowl. Similarly, Officer Traughber found Defendant wearing all his clothes, even as the commode's water tank continued to refill. Defendant was not rearranging his clothes as would be expected if he had used the toilet for its intended purpose. Officer Traughber also observed water (and not urine) splattered on the toilet seat, as if something had been dropped in the bowl and splashed water up.

---

[9] Under Texas Penal Code section 37.09(a)(1) (Vernon Supp. 2000), "[a] person commits an offense if, knowing that an investigation or official proceeding is in progress, he: (1) alters, destroys, or conceals any record, document, or thing with intent to impair its verity, legibility, or availability as evidence in the investigation or official proceeding." See Vaughn, 33 S.W.3d at 903.

Furthermore, when asked what he had flushed down the toilet, Defendant repeatedly stated, "I snort." Defendant gave no indication that he flushed the commode because he had been using the restroom. Defendant also admitted that the powder cocaine Officer Traughber found at the kitchen table belonged to him. Additionally, according to Lieutenant MacKall's expert testimony, powder cocaine would dissolve in the toilet bowl water, and any other objects that actually went down the toilet would be impossible to recover, even if the members of the crime suppression unit had attempted to lift the toilet off the floor.

Taken together, we conclude that the circumstantial evidence in this case supports only one reasonable inference: Defendant flushed some "thing" down the toilet in order to prevent its confiscation by the police. The instantaneous flushing sound and the water splattered on the toilet seat indicate that, upon seeing the officers enter the apartment, Defendant hastily rushed to the bathroom to throw something in the toilet bowl. If Defendant had run to the bathroom to use the facilities, one would not expect Officer Traughber to hear an immediate flushing sound or to discover merely water splattered on the toilet seat. Furthermore, Defendant's state of complete dress while the toilet bowl was still refilling and his repetition of the statement "I snort" make it unreasonable to infer that Defendant used the toilet for its intended purpose. The expert testimony confirms that, once Defendant flushed the commode and the contents of the toilet bowl went down into the toilet, the evidence in the bowl became impossible to recover. Defendant thereby concealed and prevented the disclosure of whatever he had flushed down the toilet bowl, ruining its evidentiary value. Thus, Defendant "conceal[ed]" and "destroy[ed]" the "thing," within the meaning of section 39-16-503(a)(1). See State v. Papillion, 556 So. 2d 1331, 1336 (La. Ct. App. 1990) (affirming conviction for obstruction of justice where defendant was seen leaning over a flushing commode and officers found drug paraphernalia and cocaine elsewhere in the residence, but nothing besides five bullets was recovered from the commode).[10]

We are not persuaded by Defendant's reliance on a case involving the abandonment of evidence during a flight from police. In State v. Patton, law enforcement officers

_____

[10] Under Louisiana law when Papillion was decided, obstruction of justice included the following:

(1) Tampering with evidence with the specific intent of distorting the results of any criminal investigation or proceeding which may reasonably prove relevant to a criminal investigation or proceeding. Tampering with evidence shall include the intentional alteration, movement, removal, or addition of any object or substance . . . :

(a) At the location of any incident which the perpetrator knows or has good reason to believe will be the subject of any investigation by . . . law enforcement officers.

Papillion, 556 So. 2d at 1336 (quoting La. Rev. Stat. Ann. § 14:130.1).

-11-

attempted to arrest the defendant at the end of a drug transaction with a police informant. 898 S.W.2d 732, 734 (Tenn. Crim. App. 1994). The defendant ran from the officers and tossed away the bag of marijuana that he had just purchased. Officers arrested the defendant and retrieved the bag. The Court of Criminal Appeals held that the trial court properly dismissed the indictment charging the defendant with evidence tampering because the statute did not criminalize "'mere abandonment' of contraband." Id. at 736; see also State v. Jones, 983 So. 2d 95, 99 (La. 2008) (collecting cases for the proposition that tampering with evidence does not occur "where a defendant merely drops, throws down, or abandons drugs [or other contraband] in the presence of police officers"). In this case, however, Defendant did not merely abandon evidence by, for instance, throwing it in a corner. Instead, the circumstantial evidence establishes that Defendant took some evidentiary "thing" with him to the bathroom, which he proceeded to flush down the toilet so that the police officers were unable to recover it. After surveying the law across multiple jurisdictions, the Jones court concluded that appellate courts have upheld convictions for evidence tampering "where the defendant did something to impair the evidence's integrity, veracity, or availability at trial." 983 So. 2d at 100. Here, in flushing some "thing" down the toilet so that law enforcement could not recover it, Defendant committed the requisite action to impair the evidence's availability at trial, and the "mere abandonment" cases do not control.

We are also not persuaded by Defendant's citation to the factually distinguishable case of C.K. v. State, 753 So. 2d 617 (Fla. Dist. Ct. App. 2000). In that case, the court considered the sufficiency of the evidence for a violation of Florida's evidence-tampering statute, which provides that "'(1) No person, knowing that a criminal . . . investigation by a . . . law enforcement agency, . . . is pending or about to be instituted, shall: (a) [a]lter, destroy, conceal, or remove any record, document, or thing with the purpose to impair its verity or availability in such . . . investigation.'" Id. at 618 (quoting Fla. Stat. § 918.13(1)(a) (1997)) (alterations in original). In C.K., the State's only witness at the juvenile defendant's adjudicatory hearing was arresting officer Sierra, who testified that, while he and his partner were driving in an unmarked vehicle, he noticed an individual who matched the description of a suspect. As Officer Sierra parked the car, his partner approached the individual, who made a motion with his hand and began running. The two officers gave chase. They did not announce that they were police officers. Officer Sierra was not in uniform, and the other officer's attire was not described. Officer Sierra testified that, because he was parking the car while his partner approached the individual, "[h]e only caught a quick glimpse of [the accused] making a small waving motion [with his hand]." Id. at 617-18. The court held that the evidence was insufficient to support the adjudication of guilt because the prosecution failed to prove that the accused "knew of a pending criminal investigation," id. at 618, and further failed to prove that the accused "concealed or destroyed any 'thing'" on the basis of the accused's small hand gesture, id.

In our case, by contrast, there is considerably more circumstantial evidence to establish that Defendant did, in fact, flush some "thing" down the toilet and to refute any other inference to the contrary. Defendant's flight from the police, the "instantaneous" timing of the flushing, Defendant's completely dressed state while the water tank was still refilling, the splattered water around the toilet seat, Defendant's admitted possession of the cocaine found on the kitchen table, and Defendant's repeatedly saying "I snort" combine to exclude every reasonable hypothesis other than Defendant's concealment and destruction of some "thing" in response to the officers' entry and related to Defendant's professed illegal possession and use of drugs.

Because we have held that the statute does not require the State to prove the identity of the "thing," we need not adopt the portion of the Court of Criminal Appeals' holding that specifically identified cocaine as the "thing" with which Defendant tampered.[11] However, we note that, under our law, flushing drugs down a toilet constitutes the destruction of evidence and supports a conviction for tampering with evidence. See State v. Abernathy, 159 S.W.3d 601, 603, 605 (Tenn. Crim. App. 2004); see also Logan, 973 S.W.2d at 282 (holding that the defendant "successfully destroyed" the white powder inside twelve zip-lock bags merely by placing those bags in the toilet because "the evidentiary value of the contents of those bags was destroyed"). This conclusion is consistent with the law of other jurisdictions that have likewise held the same kind of activity constitutes intentional destruction of evidence within the meaning of evidence-tampering statutes. See, e.g., McKenzie v. State, 632 So. 2d 276, 277 (Fla. Dist. Ct. App. 1994); State v. Mendez, 785 A.2d 945, 954 (N.J. Super. Ct. App. Div. 2001); State v. Hawkins-Hall, No. 22381, 2008 WL 2222258, at *3 (Ohio Ct. App. May 30, 2008); Commonwealth v. Govens, 632 A.2d 1316, 1328-29 (Pa. Super. Ct. 1993). Although we have interpreted our statute not to require the precise identification of the "thing," these precedents support the broader proposition that flushing some "thing" of evidence down the toilet during a drug-related investigation constitutes the intentional destruction of evidence.

In summary, viewing the evidence in the light most favorable to the State, we hold that the evidence was sufficient to support Defendant's conviction for tampering with evidence. A reasonable trier of fact could have found all three essential elements of the

---

[11] The dissenting opinion below, in reasoning that the evidence was insufficient to sustain an evidence tampering conviction, maintained that the State could not have obtained a conviction for simple possession of cocaine based on the circumstantial evidence that Defendant flushed the toilet. Majors, 2009 WL 1422951, at *8 (Witt, J., dissenting). The analogy to the simple-possession statute is misplaced, however, for that statute requires possession of a "controlled substance" as an essential element of the offense. See Tenn. Code Ann. § 39-17-418 (2006). As we have explained, the evidence tampering statute only requires tampering with a "record, document, or thing," and the word "thing" encompasses any object or entity, even one that is not capable of a precise designation.

offense beyond a reasonable doubt. Specifically, based on the only reasonable inferences to be drawn from the circumstantial evidence, Defendant knew that an investigation was in progress and thereafter concealed and destroyed some "thing" with the intent to impair its availability as evidence in the investigation. The statute does not require the State to establish the precise identity of the tampered "thing."

## II. Remaining Issues

Defendant also maintains that the trial court erred by denying Defendant's motion to dismiss the indictment and by improperly instructing the jury. Both of these alleged errors are variants of the issue that we have already resolved, for Defendant merely maintains that both the indictment and jury instructions should have identified the "record, document, or thing" with which Defendant allegedly tampered.

## A. Indictment

Because Defendant did not challenge the indictment in the Court of Criminal Appeals, that issue is waived. Tenn. R. App. P. 13(a) advisory comm'n cmt. Nonetheless, under the doctrine of "plain error" review, we have the authority to consider a waived issue "[w]hen necessary to do substantial justice" if the issue "has affected the substantial rights of a party." Tenn. R. App. P. 36(b); see also State v. Hatcher, 310 S.W.3d 788, 808 (Tenn. 2010). The Court does not grant relief under plain error review unless these five criteria are all satisfied: (1) the record clearly establishes what occurred in the trial court; (2) the error breached a clear and unequivocal rule of law; (3) the error adversely affected a substantial right of the complaining party; (4) the error was not waived for tactical purposes; and (5) substantial justice is at stake, that is the error was so significant that it "'probably changed the outcome of the trial.'" State v. Smith, 24 S.W.3d 274, 282-83 (Tenn. 2000) (quoting State v. Adkisson, 899 S.W.2d 626, 642 (Tenn. Crim. App. 1994)). The defendant bears the burden of persuading us that the trial court committed plain error. State v. Banks, 271 S.W.3d 90, 119 (Tenn. 2008). We need not consider all five factors if it is clear from the record that at least one factor cannot be established. Smith, 24 S.W.3d at 283.

Here, Defendant does not even attempt to carry his burden of persuading us that all five criteria of plain-error review are satisfied. Instead, Defendant merely insists his indictment was defective because it did not identify the "thing" with which Defendant tampered. The indictment must provide notice to the defendant of the charged offense, provide the court with adequate grounds for entering a proper judgment, and adequately protect the defendant against double jeopardy. State v. Byrd, 820 S.W.2d 739, 741 (Tenn. 1991). It is generally sufficient for the indictment to state the offense charged in the words of the statute. State v. Griffis, 964 S.W.2d 577, 591 (Tenn. Crim. App. 1997). As we have

held supra, the specific identity of the "thing" with which Defendant tampered is not an essential element of the offense. By alleging that Defendant tampered with "any record, document, or thing," the indictment was not constitutionally deficient. Therefore, Defendant has failed to establish the breach of a clear and unequivocal rule of law. Plain error relief is not warranted.

## B. Jury Instruction

Turning to Defendant's final issue, the Court of Criminal Appeals correctly articulated the legal principles that govern jury instructions in criminal cases. Every defendant "has a right to a correct and complete charge of the law so that each issue of fact raised by the evidence will be submitted to the jury on proper instructions." State v. Farner, 66 S.W.3d 188, 204 (Tenn. 2001). The omission of an essential element from the jury charge is subject to harmless error analysis. State v. Garrison, 40 S.W.3d 426, 434 (Tenn. 2000). "An instruction should be considered prejudicially erroneous only if the jury charge, when read as a whole, fails to fairly submit the legal issues or misleads the jury as to the applicable law." State v. Faulkner, 154 S.W.3d 48, 58 (Tenn. 2005).

Here, the instruction found in the record essentially employed the language of our evidence tampering statute, see Tenn. Code Ann. § 39-16-503(a). In relying on the statutory language, the instruction fairly submitted the legal issues and did not mislead the jury concerning the applicable law. See Woods v. Herman Walldorf & Co., 26 S.W.3d 868, 878 (Tenn. Ct. App. 1999); State v. Dillmon, No. M1997 00080 CCA R3 CD, 1999 WL 1257722, at *9-10 (Tenn. Crim. App. Dec. 28, 1999). We acknowledge that the verbal charge delivered by the trial judge contains an internal correction. Initially, the trial judge referred to Defendant's alteration, destruction, or concealment of "any record." She immediately corrected this limited description, however, by explaining that "it also needs to be record *or any thing. It should be thing*" (emphasis added). The judge then stated that she was "going to change this," by which we presume that she was going to make the correction on the written jury charge that the jury took into deliberations. She also advised the jury at the end of all the instructions that there were typographical errors that needed to be corrected on "the main charge" and that she would make the changes and then make copies for the jurors before they began deliberating the next morning. Because Defendant failed to include the written jury charge in the record before this Court, see Tenn. R. App. 24(b), we are unable to confirm that the written correction was made.[12]

---

[12] It is the appellant's duty to compile the record necessary for resolution of the issues presented to an appellate court. State v. Bobadilla, 181 S.W.3d 641, 643 (Tenn. 2005).

In any event, Defendant's complaint before this Court is limited to the trial court's failure to identify the "thing" in her instructions to the jury. Although Tennessee Pattern Jury Instruction (Criminal) 26.03 directs the trial court to name the record, document, or thing when charging the jury on tampering with evidence, we have squarely held that a trial court is not limited to using the pattern instructions. James, — S.W.3d at —, 2010 WL 2539649 at *3; State v. West, 844 S.W.2d 144, 151 (Tenn. 1992). Furthermore, as we have already held supra, in cases involving alleged tampering with objects or entities, the specific identity of the "thing" is not an essential element of the crime. Rather, the State must establish beyond a reasonable doubt that the accused tampered with some "thing." We hold that the trial court did not err in failing to name in its jury instruction the "thing" with which Defendant tampered.[13]

### Conclusion

We hold that, in order to convict an accused for tampering with evidence, the State is not required to prove beyond a reasonable doubt the specific identity of the "thing" that the accused has altered, destroyed, or concealed. Under these facts, viewing the evidence in the light most favorable to the prosecution, we further hold that the evidence is sufficient to sustain Defendant's conviction for tampering with evidence. The denial of the motion to dismiss the indictment was not plain error, and the trial court did not commit reversible error in instructing the jury. Therefore, we affirm the judgments of the trial court and the Court of Criminal Appeals. Since it appears Defendant is indigent, we tax the costs of this appeal to the State of Tennessee.

_____
CORNELIA A. CLARK, JUSTICE

---

[13] Defendant contends, without elaboration, that the trial court's jury instruction did not reflect the language of the superseding indictment. Defendant is incorrect. The language of the superseding indictment, like the jury instruction, closely follows the statutory language and uses the same words.