IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
April 20, 2022 Session[1]

## STATE OF TENNESSEE v. MARK CHRISTOPHER BEASLEY

**Appeal from the Circuit Court for Carroll County**
**No. 21-CR-4, 20-CR-4    Donald E. Parish, Judge**
_____

### No. W2021-00585-CCA-R3-CD
_____

Following a bench trial, the defendant, Mark Christopher Beasley, was convicted in Case Number 20CR4 of two counts of violation of the conditions of community supervision for life; two counts of failure to appear; and one count of violation of the sexual offender registry and, in Case Number 21CR4, of two counts of violation of the conditions of community supervision for life; one count of tampering with, removing, or vandalizing a tracking device; and one count of tampering with evidence. The trial court imposed effective sentences of one year and four years, respectively, to be served consecutively for a total effective sentence of five years. On appeal, the defendant asserts the proof is insufficient to sustain his conviction for tampering with evidence in Case Number 21CR4 and, in the alternative, his convictions for tampering with evidence and tampering with, removing, or vandalizing a tracking device violate principles of double jeopardy. After review, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Affirmed**

J. ROSS DYER, J., delivered the opinion of the court, in which JOHN EVERETT WILLIAMS, P.J., joined. CAMILLE R. MCMULLEN, J., filed a dissenting opinion.

Brian D. Wilson, Assistant Public Defender, Tennessee District Public Defenders Conference, Franklin, Tennessee (on appeal); Robert "Tas" Gardner, District Public Defender; and Billy R. Roe, Jr., Assistant District Public Defender, Camden, Tennessee (at trial), for the appellant, Mark Christopher Beasley.

Herbert H. Slatery III, Attorney General and Reporter; Ronald L. Coleman, Assistant Attorney General; Matthew F. Stowe, District Attorney General; and James B. Webb and Devin Wilson, Assistant District Attorneys General, for the appellee, State of Tennessee.

_____

[1] Oral argument in this matter was held at the University of Tennessee at Martin.

# OPINION

## *Facts and Procedural History*

The defendant was placed on community supervision for life following his February 2008 conviction for attempted rape.[2]  In January 2020, in Case Number 20CR4, the defendant was indicted on three counts of violation of the conditions of community supervision for life; two counts of failure to appear; and one count of violation of the sexual offender registry.  The defendant waived his right to trial by jury on September 9, 2020.  The State filed a notice of intent for the defendant to be sentenced as a Range II offender on November 3, 2020, as well as a notice of intent to seek consecutive sentencing on March 19, 2021.

In Case Number 21CR4, the defendant was charged through a criminal information filed on March 1, 2021, with three counts of violation of the conditions of community supervision for life; one count of tampering with, removing, or vandalizing a tracking device; and one count of tampering with evidence.  The two cases were consolidated on March 24, 2021, and a bench trial was conducted on April 9, 2021.

At trial, Tarra Page, an officer with the Tennessee Department of Correction ("TDOC") Board of Probation and Parole, testified she reviewed the sex offender registry requirements with the defendant in March 2019.  She noted that while the sex offender registry requirements did not prohibit illegal drug use, such prohibition was contained in the conditions of community supervision for life which the defendant signed upon his release from prison in July 2011.  Ms. Page performed a drug screen on the defendant on May 14, 2019, and he tested positive for marijuana.  The positive test resulted in a charge of violation of the conditions of community supervision for life.

Ms. Page recalled the defendant received a charge for violation of the sex offender registry because he was incarcerated in the Carroll County Jail for eleven days in June 2019 and did not formally update his address with her office within two business days of his release.  Ms. Page acknowledged the defendant timely informed her of his release over the phone but said he failed to report in person as instructed to "update his registry."  Ms. Page drug-tested the defendant again on July 9, 2019, and he tested positive for marijuana resulting in another charge for violating the conditions of community supervision for life.  Ms. Page recalled the defendant had previously been convicted of violating the sex

---

[2]We glean the February 2008 date from the indictment and criminal information in the respective cases, as well as a TOMIS print-out contained in the record.  However, an officer with the board of probation and parole testified at trial the defendant pled guilty to attempted rape on May 28, 2009.  Resolution of the discrepancy is not necessary for the determination of this case.

offender registry requirements in November 2015, prior to her undertaking supervision of him. Ms. Page transitioned out of supervising the defendant in December 2019.

Jill Taylor, the general sessions court clerk for Carroll County, confirmed two affidavits of complaint filed against the defendant for failure to appear, one on July 24, 2019, and the other on August 8, 2019.

Martin Higginbotham, a department manager with the TDOC Board of Probation and Parole, testified concerning the use of GPS ankle monitors for tracking in community supervision cases. Officer Higginbotham explained that the offenders wore a monitor for the first ninety days, until a psychosexual evaluation was performed, and then they would be off-monitor unless a warrant was filed against the offender. He summarized, "[s]o, you will see periods of time with certain offenders where they're not being monitored, and then again, they are, because they have been placed back on ankle monitoring." He noted that an ankle monitor was placed on the defendant on September 19, 2019.

Officer Higginbotham stated the defendant met with a TDOC officer for a routine drug screen the morning of April 22, 2020, and he tested positive for methamphetamine. Later that afternoon, around 2:50 p.m., officers received an alert the defendant's ankle monitor had been removed. The defendant's supervising officer attempted to contact the defendant, while Officer Higginbotham and another probation and parole manager, Officer Jonathan Holland, responded to the last known location of the GPS device, the Hollow Rock convenience store. The defendant was not at the location when they arrived, but they discovered the device located in a trash can in the store's restroom. The strap of the unit appeared to have been cut with a pair of garden shears that were still attached to the tag.

Officer Holland met Officer Higginbotham at the Hollow Rock convenience store, and the two started looking for the tracking device, which continued to relay a general signal. He agreed "it [was] fair to say that [he] knew where the unit was, it[] [was] just a matter of finding it[.]" Officer Holland said he and Officer Higginbotham spent about twenty minutes looking for the device, and he finally found the device in a trash can in the restroom inside the store.

The forty-seven-year-old defendant testified he had a hard time taking care of himself and relied on his parents to help care for him. He said he had spent a year in jail prior to his trial and had been mistreated by other inmates. The defendant acknowledged he "did wrong" by cutting off the ankle monitor, apologized for his actions, and promised he would never do it again. He said, if released, his father would help him attend appointments and pay fines and court costs.

On cross-examination, the defendant admitted he had cut off an ankle monitor once before, in 2015. On redirect examination, the defendant said he cut off the ankle monitor this time because he "was on drugs, and [he] needed help from drugs," and he was "scared" and "terrified" of going back to jail.

After the close of the proof, the trial court issued verdicts in both cases. In Case Number 20CR4, the trial court found the defendant guilty of two counts of violation of the conditions of community supervision for life; two counts of failure to appear; and one count of violation of the sexual offender registry. The trial court found the defendant not guilty of the count of violation of the conditions of community supervision for life contained in Count 3 of the indictment. The trial court then imposed an effective sentence of one year in the Department of Correction.

In Case Number 21CR4, the trial court found the defendant guilty of two counts of violation of the conditions of community supervision for life; one count of tampering with, removing, or vandalizing a tracking device; and one count of tampering with evidence. The trial court found the defendant not guilty of violation of the conditions of community supervision for life contained in Count 1 of the information. The court imposed an effective sentence of four years in the Department of Correction and ordered it to be served consecutively to the sentence in Case Number 20CR4.

## *Analysis*

### I.   **Sufficiency**

The defendant argues the evidence is insufficient to sustain his conviction for tampering with evidence in Case Number 21CR4 because "the proof failed to establish that he altered, destroyed, or concealed the GPS device that he removed from his ankle or that he intended to tamper with the device for the purpose of impeding its verity, legibility, or availability as evidence."

When the sufficiency of the evidence is challenged, the relevant question of the reviewing court is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *see also* Tenn. R. App. P. 13(e) ("Findings of guilt in criminal actions whether by the trial court or jury shall be set aside if the evidence is insufficient to support the findings by the trier of fact of guilt beyond a reasonable doubt."); *State v. Evans*, 838 S.W.2d 185, 190-91 (Tenn. 1992); *State v. Anderson*, 835 S.W.2d 600, 604 (Tenn. Crim. App. 1992). All questions involving the credibility of witnesses, the weight and value to be given the evidence, and all factual issues are resolved by the trier of fact. *State v. Pappas*, 754 S.W.2d 620, 623

(Tenn. Crim. App. 1987). "A guilty verdict by the jury, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the theory of the State." *State v. Grace*, 493 S.W.2d 474, 476 (Tenn. 1973). Our Supreme Court has stated the rationale for this rule:

> This well-settled rule rests on a sound foundation. The trial judge and the jury see the witnesses face to face, hear their testimony and observe their demeanor on the stand. Thus the trial judge and jury are the primary instrumentality of justice to determine the weight and credibility to be given to the testimony of witnesses. In the trial forum alone is there human atmosphere and the totality of the evidence cannot be reproduced with a written record in this Court.

*Bolin v. State*, 405 S.W.2d 768, 771 (Tenn. 1966) (citing *Carroll v. State*, 370 S.W.2d 523 (1963)). "A jury conviction removes the presumption of innocence with which a defendant is initially cloaked and replaces it with one of guilt, so that on appeal a convicted defendant has the burden of demonstrating that the evidence is insufficient." *State v. Tuggle*, 639 S.W.2d 913, 914 (Tenn. 1982).

Relevant here, Tennessee Code Annotated section 39-16-503(a)(1) sets forth the following definition of tampering with evidence:

> (a) It is unlawful for any person, knowing that an investigation or official proceeding is pending or in progress to:
>
> > (1) Alter, destroy, or conceal any record, document or thing with intent to impair its verity, legibility, or availability as evidence in the investigation or official proceeding[.]

Tenn. Code Ann. § 39-16-503(a)(1).

The statute requires the State to prove "timing, action, and intent" beyond a reasonable doubt. *State v. Hawkins*, 406 S.W.3d 121, 132 (Tenn. 2013) (quoting *State v. Gonzales*, 2 P.3d 954, 957 (Utah Ct. App. 2000)). "The 'timing' element requires that the act be done only after the defendant forms a belief that an investigation or proceeding 'is pending or in progress.'" *Id.* (emphasis added); *see also State v. Smith*, 436 S.W.3d 751, 763 (Tenn. 2014). "The 'action' element requires alteration, destruction, or concealment." *Hawkins*, 406 S.W.3d at 132. To "conceal" a thing means "to prevent disclosure or recognition of" a thing or "to place [a thing] out of sight." *Id.* (citing *State v. Majors*, 318 S.W.3d 850, 859 (Tenn. 2010)). For "intent" to be established, the proof must show that through his actions, the defendant intended "to hinder the investigation or official

proceeding by impairing the record's, document's or thing's 'verity, legibility, or availability as evidence.'" *Id.* (quoting Tenn. Code Ann. § 39-16-503(a)(1)). Tampering with evidence is a "specific intent" crime. *Id.* (internal citations omitted).

The defendant first asserts he did not alter, destroy, or conceal the tracking device. Although he provides arguments concerning all three possible avenues, only concealment is relevant here being the theory under which he was charged. As to concealment, the crux of the defendant's argument is he abandoned the device or "minimally delayed" its discovery, as set out in *Hawkins*, 406 S.W.3d at 138, not "concealed" it.

In *Hawkins*, the defendant shot the victim with a sawed-off shotgun, ran a short distance, and tossed the shotgun over a fence onto a miniature golf course where it laid easily visible when law enforcement arrived in the area moments later. *Id.* at 125-127. The *Hawkins* court analyzed a number of cases from various jurisdictions regarding abandonment versus concealment in determining whether the defendant's actions satisfied the elements of evidence tampering. Our supreme court concluded if the abandoned evidence was not permanently altered or destroyed and its concealment "delayed minimally, if at all," the officers' discovery of it, then the elements have not been met. *Id.* at 131, 138. The court summarized the particular facts of the case as follows:

> In the heat of the moment, shortly after firing the fatal shot, [the defendant] tossed his shotgun over a fence. He did not immediately leave the crime scene. The fence was short and easy to see through. Nothing actually covered the weapon. Had the area been well-lit, the gun would have been easily seen, especially against the snow that lightly covered the ground. The police appear to have found the shotgun rather quickly, and the shotgun itself as well as the DNA evidence found on the shotgun were successfully produced as evidence against [the defendant] at his trial.
>
> . . . .
>
> [The defendant] did not "place [the shotgun] out of sight." If he "prevent[ed] disclosure or recognition of" the gun, he did so only for a brief period of time. *State v. Majors*, 318 S.W.3d at 859. Like the defendant in *State v. Lasu*, [768 N.W.2d 447, 451 (Neb. 2009),] [the defendant] "placed the evidence where it was quite likely to be discovered, even if he hoped that it might be less associated with him. . . . All [the defendant] attempted to conceal was the fact of his possession of the evidence – not the evidence itself." *See State v. Lasu*, 768 N.W.2d at 452.

*Hawkins*, 406 S.W.3d at 137.

The facts in the present case are easily distinguishable from those in *Hawkins*. Placement of a small electronic device in a public restroom trash can and then completely leaving the area is vastly different than tossing a sawed-off shotgun in plain sight onto a miniature golf course and remaining nearby. Even if law enforcement in this case was able to locate the device due to its continued emission of a signal simply showing its general, not specific, location upon removal, the defendant placed it in an area it was much more likely to be discarded than discovered. The defendant's ultimate lack of success does not mean he did not act "to prevent disclosure" of the device or "place [the device] out of sight." *Hawkins*, 406 S.W.3d at 132. The defendant hangs his hat on there having been no testimony concerning the visibility of the tracker within the trash can, but even without such specific testimony the fact remains he disposed of it in a trash can and did not simply lay it on a counter or shelf out in the open. Unlike in *Hawkins*, where the court noted that the defendant did not place the gun out of sight, the defendant in the instant matter discarded the tracking device in a restroom trash can inside the store. Clearly, the defendant's intent was to significantly delay, if not prevent, the discovery of the device, increase his distance from the store, and overall aid in his escape.

Two additional cases cited by the defendant in support of his argument, *State v. Alvina Tinisha Brown*, No. E2016-00314-CCA-R3-CD, 2017 WL 2464981 (Tenn. Crim. App. June 7, 2017), and *State v. Elahu Hill, Jr.*, No. W2015-00688-CCA-R3-CD, 2015 WL 6522834 (Tenn. Crim. App. Oct. 28, 2015), involved situations where the evidence in question stayed in the possession of those defendants and was almost immediately discovered. These cases, therefore, are readily distinguishable and provide the defendant no relief. Another case pointed to by the defendant in support of his claim of abandonment, *Lasu*, 768 N.W.2d at 451, in addition to not being binding authority on this court, involved a situation where the physical evidence was abandoned *in the presence of law enforcement* and that court's holding specifically included such premise.

As to the defendant's assertion there was no proof he concealed the device for purposes of impeding its verity, legibility, or availability as evidence, the defendant admittedly was aware a warrant was likely to be sworn out against him after testing positive for methamphetamine. The defendant also would have been aware charges would arise from his removal of the device. By concealing the device in a trash can, the defendant acted to impair the device's ability to track him and for him to be discovered and held accountable for his actions. His ultimate lack of success in this endeavor, does not mean he did not have the requisite intent.

The defendant suggests the evidentiary value of the device was not impeded by its concealment because law enforcement was able to locate the device. However, the search took the officers twenty minutes to find the device, during which time the defendant was

- 7 -

on the loose, and the device's value was impeded because it was no longer attached to him providing his location. In addition, the defendant's assertion there was insufficient proof he "specifically intended to impair the device's use or availability as evidence" is unpersuasive. We cannot imagine what the defendant's intent in placing the device in a public restroom trash can could have been other than to impair the investigation in some fashion. At the time the defendant removed the tracking device, he knew that he had failed a drug test and that his probation was likely going to be revoked. Thus, in order to stall law enforcement's investigation and aid in is ability to allude them, the defendant removed the device and discarded in a trash can. The dissent suggests, that the defendant's actions did not impair the investigation because the results of the drug screen were known and there was a basis for revoking the defendant's probation. However, apprehension is just as much a part of law enforcement's investigation, especially in a revocation matter, as collecting the proof needed to revoke one's probation, and here, the defendant's removal and discarding of the electronic monitoring device impaired law enforcement's ability to apprehend him and conclude its investigation. Accordingly, the evidence was sufficient to sustain the defendant's conviction.

In light of this conclusion, the defendant's ancillary assertion that the violation of community supervision based on tampering with evidence should be dismissed "as no underlying crime was committed" is also without merit.

## II. Double Jeopardy

The defendant also argues his convictions for tampering with evidence and tampering with, removing, or vandalizing a tracking device violate principles of double jeopardy because they constitute multiple punishments for the same offense. The State responds that the defendant would only be entitled to relief under the plain error doctrine because he failed to raise the issue in the court below, a position the defendant contests because it was a bench trial. We need not belabor this dispute because we readily conclude there is no double jeopardy violation.

Both the federal and state constitutions protect an accused from being "twice put in jeopardy of life or limb" for "the same offense." U.S. Const. Amend. V; Tenn. Const. art. 1, sec. 10. The Double Jeopardy Clause provides three distinct protections: (1) protection against a second prosecution for the same offense after acquittal; (2) protection against a second prosecution for the same offense after conviction; and (3) protection against multiple punishments for the same offense. *State v. Watkins*, 362 S.W.3d 530, 541 (Tenn. 2012). A claim that multiple convictions violate the protection against double jeopardy is a mixed question of law and fact, which this Court will review de novo without any presumption of correctness. *State v. Smith*, 436 S.W.3d 751, 766 (Tenn. 2014) (citing *State v. Thompson*, 285 S.W. 3d 840, 846 (Tenn. 2009)).

The Tennessee Supreme Court has divided single prosecution, multiple punishment claims into two categories: (1) unit-of-prosecution claims, "when a defendant who has been convicted of multiple violations of the same statute asserts that the multiple convictions are for the same offense," and (2) multiple description claims, "when a defendant who has been convicted of multiple criminal offenses under different statutes alleges that the statutes punish the same offense." *Id.* (citing *Watkins*, 362 S.W.3d at 543-44). Here, the defendant is making a multiple description claim. To address a multiple description claim, we must apply the two-pronged test articulated in *Blockburger v. United States*, 284 U.S. 299, 304 (1932).

> In a *Blockburger* analysis, our primary focus is whether the General Assembly expressed an intent to permit or preclude multiple punishments. If either intent has been expressed, no further analysis is required. When the legislative intent is unclear, however, we must apply the "same elements test" from *Blockburger*. Under this test, the first step is to determine whether the convictions arise from the same act or transaction. The second step is to determine whether the elements of the offenses are the same. If each offense contains an element that the other offense does not, the statutes do not violate double jeopardy.

*Smith*, 436 S.W.3d at 767 (internal citations omitted).

Tennessee Code Annotated section 39-16-503 defines the offense of tampering with evidence as follows:

> (a) It is unlawful for any person, knowing that an investigation or official proceeding is pending or in progress, to:
>
> > (1) Alter, destroy, or conceal any record, document or thing with intent to impair its verity, legibility, or availability as evidence in the investigation or official proceeding; or
> >
> > (2) Make, present, or use any record, document or thing with knowledge of its falsity and with intent to affect the course or outcome of the investigation or official proceeding.

*Id.* § 39-16-503(a).

- 9 -

Tennessee Code Annotated section 40-39-304 criminalizes the "[i]ntentional tampering with, removal of, or vandalism to a device issued pursuant to a location tracking and crime correlation based monitoring and supervision program described in § 40-39-302 by a person duly enrolled in the program[.]" *Id.* § 40-39-304(a).

We initially note the legislature did not express a clear intent to permit or preclude multiple punishments. Therefore, we must apply the "same elements test" from *Blockburger*. Under this test, we must first ascertain whether the convictions arose from the same act or transaction. In looking at the information charging the defendant with the two offenses in question, we could feasibly determine the tampering with, removing, or vandalizing a tracking device charge arose from the defendant's removal of the tracking device from his person; whereas the tampering with evidence charge arose from the defendant's act of concealing the tracking device in the trash can. Thus, two different convictions for two separate actions. However, arguably, the defendant's actions furthered a single objective, i.e., getting rid of his tracking device, and could be seen as constituting a continuing course of conduct arising out of the same act or transaction. Given this dispute, we will undertake the second step of the *Blockburger* analysis.

Again, the second step is to determine whether the elements of the offenses are the same. If each offense contains an element that the other offense does not, the statutes do not violate double jeopardy. Tampering with evidence requires the unique elements that the act be done knowing a proceeding is pending or in progress and with "intent to impair [the item]'s verity, legibility, or availability as evidence in the investigation or official proceeding[.]" Tenn. Code Ann. § 39-16-503(a)(1). Tampering with, removing, or vandalizing a tracking device requires the unique element of "a device issued pursuant to a location tracking and crime correlation based monitoring and supervision program." *Id.* § 40-39-304(a). Each offense contains an element that the other offense does not; therefore, the statutes do not violate double jeopardy and merger of the two offenses is unnecessary.

### *Conclusion*

Based upon the foregoing authorities and reasoning, the judgments of the trial court are affirmed.

_____

J. ROSS DYER, JUDGE

- 10 -