IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs July 21, 2015

## STATE OF TENNESSEE v. DONNIE DEWAYNE DAVENPORT

**Appeal from the Criminal Court for Cumberland County**
**No. 120320      David A. Patterson, Judge**

_____

**No. E2014-02545-CCA-R3-CD – Filed October 12, 2015**

_____

The Defendant-Appellant, Donnie Dewayne Davenport, was convicted by a Cumberland County Criminal Court jury of promotion of methamphetamine manufacture, a Class D felony. See T.C.A. § 39-17-433. He was sentenced as a Range III, career offender to twelve years' confinement to be served at sixty percent. On appeal, he argues (1) that the evidence was insufficient to support his conviction and (2) that his sentence is excessive and contrary to law. Upon our review, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Affirmed**

CAMILLE R. MCMULLEN, J., delivered the opinion of the court, in which ROGER A. PAGE and ROBERT L. HOLLOWAY, JR., JJ., joined.

Kelly A. Tollett, Crossville, Tennessee, for the Defendant-Appellant, Donnie Dewayne Davenport.

Herbert H. Slatery III, Attorney General and Reporter; Clarence E. Lutz, Senior Counsel; Randall York, District Attorney General; and Gary S. McKenzie, Assistant District Attorney General, for the Appellee, State of Tennessee.

## OPINION

On June 3, 2012, an anonymous tip alleging that "someone was cooking methamphetamine" led officers of the Cumberland County Sheriff's Department Criminal Nuisance Enforcement Team ("CNET") to the Defendant-Appellant's residence at 681 Grayfox Avenue. Based on the investigation that followed, the Defendant-Appellant was indicted on one count of promotion of methamphetamine manufacture. At the July 16, 2013 trial, Deputy David Moore testified that he arrived at the Defendant-Appellant's property on the day of the offense and quickly noticed a "burn pile" that included an empty bottle of Polar Pure water disinfectant, empty lithium battery

containers, and a Powerade bottle with its top cut off. He said that these items were frequently used to make methamphetamine. He further explained that plastic bottles and lithium batteries are common materials used in the "one pot" method of methamphetamine production and that water treatment chemicals, like Polar Pure, are often used to balance the pH level of the combined chemicals in methamphetamine.

The Defendant-Appellant was eventually detained, and the officers conducted a search of his property and vehicles after obtaining a warrant. During the search, Deputy Moore logged the items recovered from the search on an inventory form. The search did not yield a water collection or purification system which would explain the need for Polar Pure. Deputy Moore agreed that no actual methamphetamine or any devices used to ingest it were recovered from the Defendant-Appellant's camper or outbuilding. However, a blue Igloo cooler, recovered from the Defendant-Appellant's outbuilding, contained two hundred coffee filters, three bottles of PH test strips, a box of one count cold compresses, three basters, and two four count containers of lithium batteries. Deputy Moore agreed that the contents of the cooler consisted of all but two of the components necessary for the manufacture of methamphetamine.

Sergeant Jason Elmore, a certified member of the Tennessee Methamphetamine Task Force and leader of the CNET, testified that when he arrived at 681 Grayfox Avenue, he saw the Defendant-Appellant exiting a wooden outbuilding. When the Defendant-Appellant saw Sgt. Elmore, he immediately locked the doors to the outbuilding and would not consent to a search. Sergeant Elmore said that the Defendant-Appellant also refused to remove his hands from his pockets despite being repeatedly asked to do so.

Sergeant Elmore testified regarding two different methods of manufacturing methamphetamine, the "red P" method and the "one pot" or "shake and bake" method. The "red P" or "red Phosphorous" method required a heating source, such as a stove, a source of red Phosphorous, such as matches, match striker plates, or flares, and other common items like iodine, ephedrine, coffee filters, turkey basters, and aluminum foil. The contents of the blue Igloo cooler were indicative of manufacturing methamphetamine by the "one pot" method. The one-pot method involved the use of a small plastic container and five main ingredients: a solvent, sodium hydroxide, ammonium nitrate, lithium, and ephedrine. The heat source for the "one pot" process comes from lithium strips, which manufacturers generally cut out of batteries. The five ingredients are placed together in a small plastic bottle and shaken up. The mixture starts to pressurize due to the heat generated from the lithium. Sergeant Elmore said that to take pressure off, the bottle must be periodically "burped," and, after about an hour, the top of the bottle is usually cut off, the pH level is tested with pH strips, and the methamphetamine is extracted typically with basters and coffee filters.

After explaining the overall process for the "one pot" method, Sgt. Elmore explained the relevance of the items recovered from the Defendant-Appellant's property. He noted the 32 oz. plastic bottle in the burn pile outside the outbuilding and the contents of the blue Igloo cooler, which included coffee filters, pH strips, a cold press, basters, and lithium batteries. He testified that the cold press contained ammonium nitrate, which is the main ingredient for the "one pot" method. He also noted that Coleman camp fuel, a commonly used solvent, was also found the Defendant-Appellant's vehicle. Sergeant Elmore testified that the contents of the blue Igloo cooler along with the camp fuel constituted all but two of the necessary ingredients for making methamphetamine. He said that aluminum foil and latex gloves were also recovered from the outbuilding and that both are often used in the "burping" stage of the manufacture process. Finally, Sgt. Elmore stated that the Defendant-Appellant was listed in the Tennessee Methamphetamine Task Force Registry as a frequent purchaser of pseudoephedrine and that his most recent purchase was on May 21, 2013. He identified the registry as "the watch list . . . . [for] people that abuse their purchasing."

On cross-examination, Sgt. Elmore said that during his initial encounter with the Defendant-Appellant, he told him he was there looking for drug material. He also asserted that "some indicators" of "red P" manufacture were found on the Defendant-Appellant's property. He agreed that no ephedrine or sodium hydroxide was found during the search and that the burn pile contained both "old and new stuff." He disagreed, however, that it was common for people to use latex gloves while grilling.

The Defendant-Appellant testified that on the day of the offense, he was locking his shed when police walked up behind him. He claimed that he had been residing at 681 Grayfox Avenue for around three months prior to that time. He said that the owner of the property told him he could live there in his camper if he would clean up the property. He also said that the burn pile was already there when he arrived. He further asserted that none of the items recovered from his property were bought or used to make methamphetamine. Instead, he maintained that most of the items were used either for camping, grilling, or out of necessity because he did not have electricity or running water. Lastly, he testified that he found the blue cooler and its contents in the middle of the road. He explained as follows:

> I was going down the road and found it in the middle of the road and I stopped and picked it up, put all the stuff back in it. And on my way home I stopped and asked three or four people did they lose their cooler and they said no. So I went on home and I just put it up on the shelf. It had been there for about two and a half months.

On cross-examination, he acknowledged that his testimony was contrary to

-3-

Sergeant Elmore's, who stated that he did not lock the shed until he saw the police arrive. The Defendant-Appellant said that Sgt. Elmore was lying. He agreed that he had a prior conviction for aggravated burglary but maintained that he was not in fact guilty of this offense. He also agreed that he had multiple convictions for DUI, fourth offense and above. He repeated his claim that he found the cooler on the side of the road and stated that he was unaware if any of the items in the cooler were used to make methamphetamine.

Based on the above proof, the jury convicted the Defendant-Appellant of one count of promotion of methamphetamine manufacture in violation of Tennessee Code Annotated section 39-17-433. The trial court accepted the guilty verdict and set the matter for a sentencing hearing.

**Sentencing Hearing.** At the November 18, 2013 sentencing hearing, the State argued that the Defendant-Appellant qualified as a Range III, career offender based on eleven prior convictions listed in its July 2, 2013 Career Offender Notice. The State also introduced certified copies of seven of these convictions without objection. The Defendant-Appellant's criminal history consisted of the following: one aggravated burglary, two DUI's (fourth offense or greater), and eight convictions for violating the Motor Vehicle Habitual Offenders ("MVHO") Act. The Defendant-Appellant did not present any proof, but he argued to be placed on probation. The trial court responded, "there's not a range in a career offense . . . . The number of days or the percentage is set. All the finding that needs to happen is that there is the requisite number of priors." Finding that the Defendant-Appellant was a Range III, career offender, the trial court imposed a sentence of twelve years' incarceration to be served at sixty percent and a $2,500 fine. The trial court reasoned that "the [D]efendant[-Appellant] is clearly in the career range and . . . the court does not have the authority to probate the sentence."

Significantly, there was no motion for new trial filed following the sentencing hearing in this case. The judgment was filed on December 18, 2013. At some point not borne out by this record, the Defendant-Appellant filed a petition for post-conviction relief. Following a motion for a delayed appeal filed by trial counsel and a hearing on the matter, the trial court issued an order granting relief pursuant to Supreme Court Rule 28 Section 9(D)(1)(a) on October 22, 2014.[1] The trial court order (1) noted that the Defendant-Appellant's trial counsel did not file an appeal or a waiver of appeal (2) stayed

---

[1] For clarity, we note that the record contains two amended orders granting relief filed on the same day. In its first order granting the delayed appeal, the trial court based its grounds for relief on Supreme Court Rule 28 Section 9(D)(1)(b)(i). In its first amended order, entitled "Amended Order Granting Delayed Rule 3 Appeal," the trial court noted that the motion should have been granted based on section 9(D)(1)(a) of the same rule. The second amended order is entitled "Amended Order As to Delayed Appeal And Motion for New Trial."

the post-conviction proceedings until resolution of the direct appeal, and (3) appointed new counsel. On November 3, 2014, the Defendant-Appellant's new counsel filed a motion seeking permission to file a motion for new trial. On November 12, 2014, the trial court granted the motion and allowed new counsel thirty days from the entry of the order to file a motion for new trial. The record herein does not reflect that a motion for new trial was filed following the trial court's order.

## ANALYSIS

Because the Defendant-Appellant elected not to file a motion for new trial, he was required to file his notice of appeal thirty days from the entry of the trial court's November 12, 2014 Amended Order as to Delayed Appeal and Motion for New Trial. See T.C.A. § 40-30-113 (the filing period begins to run from the entry of the order granting a delayed appeal). His notice of appeal was filed on December 23, 2014, some eleven days late. As the State notes, the Defendant-Appellant has failed to provide an explanation for his untimely filing. Rule 4(a) of the Tennessee Rules of Appellate Procedure provides that "the notice of appeal required by Rule 3 shall be filed with and received by the clerk of the trial court within 30 days after the date of entry of the judgment appealed from . . . ." However, this rule also states that "in all criminal cases the 'notice of appeal' document is not jurisdictional and the filing of such document may be waived in the interest of justice." Tenn. R. App. P. 4(a). We conclude that the "interest of justice" is best served by granting a waiver in this case. See Tenn. R. App. P. 4(a); see also Crittenden v. State, 978 S.W.2d 929, 932 (Tenn. 1998). We now address the merits of the Defendant-Appellant's appeal.

**I. Sufficiency of the Evidence.** The Defendant-Appellant argues that the evidence is insufficient to support his conviction because it was "purely circumstantial." He claims that he had "perfectly logical and normal uses" for all of the items recovered from his property and denies using any of them to manufacture methamphetamine. Because two of the necessary ingredients for manufacture were missing and no "consumable methamphetamine" product was found during the search, he insists that there is not enough evidence to show an intent to produce methamphetamine. In response, the State argues that the evidence was sufficient to sustain the conviction for methamphetamine manufacture. We agree with the State.

When a defendant challenges the sufficiency of the evidence, the standard of review applied by this court is "whether, after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979). Similarly, Rule 13(e) of the Tennessee Rules of Appellate Procedure states, "Findings of guilt in criminal actions whether by the trial court or jury shall be set aside if

-5-

the evidence is insufficient to support the finding by the trier of fact of guilt beyond a reasonable doubt." When considering the sufficiency of the evidence on appeal, the State is entitled to the strongest legitimate view of the evidence and all reasonable inferences which may be drawn from that evidence. State v. Davis, 354 S.W.3d 718, 729 (Tenn. 2011) (citing State v. Majors, 318 S.W.3d 850, 857 (Tenn. 2010)). "Because a verdict of guilt removes the presumption of innocence and raises a presumption of guilt, the criminal defendant bears the burden on appeal of showing that the evidence was legally insufficient to sustain a guilty verdict." State v. Hanson, 279 S.W.3d 265, 275 (Tenn. 2009).

Guilt may be found beyond a reasonable doubt where there is direct evidence, circumstantial evidence, or a combination of the two. State v. Matthews, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990) (citing State v. Brown, 551 S.W.2d 329, 331 (Tenn. 1977); Farmer v. State, 343 S.W.2d 895, 897 (Tenn. 1961)). The standard of review for sufficiency of the evidence "'is the same whether the conviction is based upon direct or circumstantial evidence.'" State v. Dorantes, 331 S.W.3d 370, 379 (Tenn. 2011) (quoting State v. Hanson, 279 S.W.3d 265, 275 (Tenn. 2009)). The jury as the trier of fact must evaluate the credibility of the witnesses, determine the weight given to witnesses' testimony, and reconcile all conflicts in the evidence. State v. Campbell, 245 S.W.3d 331, 335 (Tenn. 2008) (citing Byrge v. State, 575 S.W.2d 292, 295 (Tenn. Crim. App. 1978)). Moreover, the jury determines the weight to be given to circumstantial evidence and the inferences to be drawn from this evidence, and the extent to which the circumstances are consistent with guilt and inconsistent with innocence are questions primarily for the jury. Dorantes, 331 S.W.3d at 379 (citing State v. Rice, 184 S.W.3d 646, 662 (Tenn. 2006)). When considering the sufficiency of the evidence, this court shall not reweigh the evidence or substitute its inferences for those drawn by the trier of fact. Id.

An individual is guilty of promoting methamphetamine manufacture if he or she "[s]ells, purchases, acquires, or delivers any chemical, drug, ingredient, or apparatus that can be used to produce methamphetamine, knowing that it will be used to produce methamphetamine, or with reckless disregard of its intended use[.]" T.C.A. § 39-17-433(a)(1) (Supp. 2012). Manufacture "means the production, preparation, propagation, compounding, conversion or processing of a controlled substance, either directly or indirectly by extraction from substances of natural origin, or independently by means of chemical synthesis[.]" Id. § 39-17-402(15).

Viewed in the light most favorable to the State, the proof adduced at trial showed that deputies from a specialized drug unit responded to an anonymous call of someone "cooking" methamphetamine at the Defendant-Appellant's residence. When deputies arrived to investigate, the Defendant-Appellant exited a wooden outbuilding and locked

the door behind him. Items indicative of the manufacture of methamphetamine were located in a burn pile near the outbuilding. Two deputies testified in detail as to why certain items in the pile were "red flags" that alerted them to potential methamphetamine manufacture. A subsequent search of the Defendant-Appellant's property and vehicles revealed key tools and ingredients for the manufacture of methamphetamine, using either the "red P" or the "one pot" method. The deputies agreed that the Defendant-Appellant was in possession of all but two of the necessary ingredients for the "one pot" method. Although the Defendant-Appellant argues that these items had "normal uses," it is reasonable for a juror to infer from the fact that all of these items were located together inside a blue Igloo cooler that the items were used in the manufacture of methamphetamine. Moreover, even though the Defendant-Appellant insists that he found the blue Igloo cooler in the middle of the road, this argument was rejected by the jury as was their prerogative. Campbell, 245 S.W.3d at 335 (Tenn. 2008) (citing Byrge, 575 S.W.2d at 29).

Upon our review, we conclude that the evidence was sufficient for a jury to find that the Defendant-Appellant knowingly or recklessly obtained and possessed the materials used to produce methamphetamine for the purpose of manufacture beyond a reasonable doubt. See T.C.A. § 39-17-433(a)(1). Accordingly, the Defendant-Appellant is not entitled to relief on this issue.

**II. Sentencing.** The Defendant-Appellant claims that his twelve-year sentence is excessive. He argues, "[g]iven [the Defendant-Appellant's] age and lack of any criminal prosecution in the four years preceding the current alleged offense, . . . there is a possibility for his rehabilitation[.]" The State responds that the trial court acted within its discretion and the Defendant-Appellant fails to show that his sentence is unreasonable. We agree with the State.

The 2005 amendments to the Sentencing Act "served to increase the discretionary authority of trial courts in sentencing." State v. Bise, 380 S.W.3d 682, 708 (Tenn. 2012). In light of this broader discretion, "sentences should be upheld so long as the statutory purposes and principles, along with any applicable enhancement and mitigating factors, have been properly addressed." Id. at 706. Moreover, "a trial court's misapplication of an enhancement or mitigating factor does not invalidate the sentence imposed unless the trial court wholly departed from the 1989 Act, as amended in 2005." Id. "So long as there are other reasons consistent with the purposes and principles of sentencing, as provided by statute, a sentence imposed by the trial court within the appropriate range should be upheld." Id. Therefore, this court reviews a trial court's sentencing determinations under "an abuse of discretion standard of review, granting a presumption of reasonableness to within-range sentencing decisions that reflect a proper application of the purposes and principles of our Sentencing Act." Id. at 707.

Pursuant to the 2005 amendments to the Sentencing Act, a trial court must consider the following when determining a defendant's specific sentence and the appropriate combination of sentencing alternatives:

> (1) The evidence, if any, received at the trial and the sentencing hearing; (2) The presentence report; (3) The principles of sentencing and arguments as to sentencing alternatives; (4) The nature and characteristics of the criminal conduct involved; (5) Evidence and information offered by the parties on the mitigating and enhancement factors set out in §§ 40-35-113 and 40-35-114; (6) Any statistical information provided by the administrative office of the courts as to sentencing practices for similar offenses in Tennessee; and (7) Any statement the defendant wishes to make in the defendant's own behalf about sentencing.

T.C.A. § 40-35-210(b)(1)-(7) (2010). The defendant has the burden of showing the impropriety of the sentence on appeal. Id. § 40-35-401(d) (2010), Sentencing Comm'n Cmts. In determining the proper sentence, the trial court must consider the defendant's potential for rehabilitation or treatment. Id. §§ 40-35-102, -103 (2010). In addition, the court must impose a sentence "no greater than that deserved for the offense committed" and "the least severe measure necessary to achieve the purposes for which the sentence is imposed." Id. § 40-35-103(2), (4).

A defendant qualifies as a career offender if that defendant has received six or more felony convictions prior to the offense for which the defendant is being sentenced when the offense for which the defendant is being sentenced is a Class D or E felony. T.C.A. § 40-35-108(a)(3). If the trial court finds beyond a reasonable doubt that the defendant is a career offender, the court must impose the maximum sentence within the applicable Range III. Id. § 40-35-108(c). The maximum sentence in the range for a career offender committing a Class D felony is twelve years served at sixty percent. See T.C.A. § 40-35-108(c); T.C.A. § 40-35-112(c)(4).

In the July 2, 2013 Career Offender Notice, the State noted eleven prior felony convictions for the Defendant-Appellant. Further, at the sentencing hearing, the State entered into evidence certified copies of seven of his eleven prior felony convictions, including one conviction for aggravated burglary, a Class C felony, and six convictions for MVHO violations, Class E felonies. See T.C.A. §§ 39-14-403l, -10-616. The Defendant-Appellant does not dispute the existence or validity of any of these prior felony convictions. He also does not argue that the trial court's sentencing range decision is improper. Although he mentions that none of his prior convictions were violent or drug-related offenses, he puts forth no legal basis for why this would render his sentence

unlawful.

As the trial court correctly notes, "there's not a range in a career offense . . . . The number of days or the percentage is set. All the finding that needs to happen is that there is the requisite number of priors." Thus, the trial court properly sentenced the Defendant-Appellant as a Range III, career offender. Indeed, upon finding the Defendant-Appellant to be a career offender, the trial court was required to sentence him to the maximum sentence within Range III for his convictions. T.C.A. § 40-35-108(c). Here, the Defendant-Appellant was convicted for a Class D felony, and the appropriate sentence range was therefore twelve years' incarceration to be served at sixty percent. See T.C.A. §§ 40-35-108(c), -112(c)(4). Accordingly, the trial court did not abuse its discretion.

## CONCLUSION

We conclude that the evidence is sufficient to sustain the Defendant-Appellant's conviction for promotion of methamphetamine manufacture and that the trial court imposed a proper sentence. The judgment of the trial court is affirmed.

_____
CAMILLE R. McMULLEN, JUDGE