IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
March 21, 2018 Session

**STATE OF TENNESSEE v. HOWARD P. FISHER**

**Appeal from the Criminal Court for Davidson County**
**No. 2015-A-632      Monte Watkins, Judge**

_____

**No. M2017-00975-CCA-R3-CD**

_____

Following a bench trial, the Defendant, Howard P. Fisher, was convicted of aggravated assault and criminal trespass, for which he received a ten-year sentence and a $50 fine, respectively.  On appeal, the Defendant argues (1) that the evidence was insufficient to support his conviction of aggravated assault; (2) that the trial court erred in granting the State a continuance for sentencing; and (3) that the trial court erred in denying his ineffective assistance of counsel claim.  Upon review, we affirm the judgments of the trial court.

 **Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed**

CAMILLE R. MCMULLEN, J., delivered the opinion of the court, in which JOHN EVERETT WILLIAMS and NORMA MCGEE OGLE, JJ., joined.

Manuel B. Russ, Nashville, Tennessee, for the Defendant, Howard P. Fisher.

Herbert H. Slatery III, Attorney General and Reporter; Clark B. Thornton, Senior Counsel; Glenn Funk, District Attorney General; and Deborah Housel, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

On the night of January 19, 2015, Ismail Salman and William Derrick, the victim, were working at the Discount Mart in Nashville, Tennessee.  Earlier that day, Salman[1] had asked the Defendant to leave the store because he was in an altercation with another customer.  The Defendant left, but told Derrick, "I will get you after you guys are

_____

[1] We acknowledge that we do not use titles when referring to every witness.  We intend no disrespect in doing so.  Judge John Everett Williams believes that referring to witnesses without proper titles is disrespectful even though none is intended.  He would prefer that every adult witness be referred to as Mr. and Mrs. or by his or her proper title.

closed." As Salman and Derrick were closing the store that night, they noticed the Defendant across the street. The Defendant began walking toward Salman and Derrick with a raised baseball bat in hand. Although Salman could not recall exactly what the Defendant was saying as he approached, his words were threatening. Salman warned Derrick that the Defendant was coming, but before the Defendant could reach them, police officers intervened and arrested the Defendant. The Defendant was later charged with and convicted of the instant offenses.

At the August 2, 2016 bench trial, Salman and Derrick testified consistently with the above facts. In addition, Salman noted that he was in fear as the Defendant approached him, holding a raised baseball bat. A video recording from the store's surveillance camera was played for the court, which Salman narrated. The video showed Salman and the Defendant, while the Defendant was approaching with the baseball bat. However, the video also showed, at one point, the Defendant had lowered the bat. Derrick additionally testified that he was "nervous" and thought the Defendant was going to hit him with the bat. The Defendant was about twenty feet from Derrick, and Derrick jumped into a friend's car to get out of the way. Derrick confirmed that he had seen the Defendant with a baseball bat and a protest sign prior to the instant offense and that the Defendant was known for engaging in protests by himself.

Officer Cameron Brown testified that on the night of the offense, he was patrolling the area and saw the Defendant in the parking lot, aggressively approaching the store with a baseball bat in his hand. The Defendant was ordered to put the bat down, and he complied. The Defendant declined to testify and did not present any proof. The trial court found the Defendant guilty as charged. The Defendant was later sentenced to ten years' incarceration, to be served consecutively to a previously imposed life sentence. After the denial of his motion for new trial, the Defendant filed this timely appeal.

## ANALYSIS

**I.** **Sufficiency of Evidence.** First, the Defendant challenges the evidence supporting his aggravated assault conviction. Specifically, the Defendant argues that the State failed to establish two essential elements of aggravated assault: (1) that the baseball bat was a deadly weapon, as required by Tennessee Code Annotated section 39-11-106, and (2) that the victim was in imminent fear of death or serious bodily injury. In response, the State contends that the evidence was sufficient to support the aggravated assault conviction because the Defendant used or attempted to use the bat in a deadly manner. For reasons that follow, we agree with the State.

A finding of guilt following a bench trial is entitled to the same weight on appeal as a jury verdict. State v. Holder, 15 S.W.3d 905, 911 (Tenn. Crim. App. 1999).

"Because a verdict of guilt removes the presumption of innocence and raises a presumption of guilt, the criminal defendant bears the burden on appeal of showing that the evidence was legally insufficient to sustain a guilty verdict." State v. Hanson, 279 S.W.3d 265, 275 (Tenn. 2009) (citing State v. Evans, 838 S.W.2d 185, 191 (Tenn. 1992)). "Appellate courts evaluating the sufficiency of the convicting evidence must determine 'whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" State v. Wagner, 382 S.W.3d 289, 297 (Tenn. 2012) (quoting Jackson v. Virginia, 443 U.S. 307, 319 (1979)); see Tenn. R. App. P. 13(e). When this court evaluates the sufficiency of the evidence on appeal, the State is entitled to the strongest legitimate view of the evidence and all reasonable inferences that may be drawn from that evidence. State v. Davis, 354 S.W.3d 718, 729 (Tenn. 2011) (citing State v. Majors, 318 S.W.3d 850, 857 (Tenn. 2010)).

Guilt may be found beyond a reasonable doubt where there is direct evidence, circumstantial evidence, or a combination of the two. State v. Sutton, 166 S.W.3d 686, 691 (Tenn. 2005); State v. Hall, 976 S.W.2d 121, 140 (Tenn. 1998). The standard of review for sufficiency of the evidence "'is the same whether the conviction is based upon direct or circumstantial evidence.'" State v. Dorantes, 331 S.W.3d 370, 379 (Tenn. 2011) (quoting State v. Hanson, 279 S.W.3d 265, 275 (Tenn. 2009)). The jury as the trier of fact must evaluate the credibility of the witnesses, determine the weight given to witnesses' testimony, and reconcile all conflicts in the evidence. State v. Campbell, 245 S.W.3d 331, 335 (Tenn. 2008) (citing Byrge v. State, 575 S.W.2d 292, 295 (Tenn. Crim. App. 1978)). Moreover, the jury determines the weight to be given to circumstantial evidence, and the inferences to be drawn from this evidence, and the extent to which the circumstances are consistent with guilt and inconsistent with innocence, are questions primarily for the jury. Dorantes, 331 S.W.3d at 379 (citing State v. Rice, 184 S.W.3d 646, 662 (Tenn. 2006)). When considering the sufficiency of the evidence, this court "neither re-weighs the evidence nor substitutes its inferences for those drawn by the jury." Wagner, 382 S.W.3d at 297 (citing State v. Bland, 958 S.W.2d 651, 659 (Tenn. 1997)).

The indictment in this case charged that the Defendant "intentionally or knowingly did cause William Derrick to reasonably fear imminent bodily injury, and [the Defendant] did use or display a deadly weapon, to wit: a baseball bat[.]" Accordingly, to sustain a conviction of assault, the State was required to prove that the Defendant "intentionally or knowingly cause[d] another to reasonably fear imminent bodily injury." T.C.A. § 39-13-101(a)(2). A person acts intentionally when his conscious objective or desire is to engage in the conduct or cause the result. Id. § 39-11-106(a)(18). A person acts knowingly when he is aware of the nature of his conduct or that the circumstances exist or that he is aware that his conduct is reasonably certain to cause the result. Id. § 39-13-101(a)(20). "Imminent danger is an immediate, real threat to one's safety." State

v. Bobby Joe Young, Jr., No. M2010-01531-CCA-R3-CD, 2011 WL 6291813, at *7 (Tenn. Crim. App. Dec.14, 2011), perm. app. denied (Tenn. Apr. 20, 2012) (citing Black's Law Dictionary (8th ed.2004)) (affirming aggravated assault conviction by display of deadly weapon and rejecting zone of danger theory). Proof of a victim's fear may be inferred from circumstantial evidence. See State v. James Paris Johnson, No. E2008-02555-CCA-R3-CD, 2010 WL 3565761, at *5 (Tenn. Crim. App. Sept. 15, 2010) (internal citations omitted) (same). To elevate this offense to aggravated assault, as indicted here, the State was required to additionally prove that the Defendant "use[d] or display[ed] a deadly weapon." T.C.A. § 39-13-102(a)(1)(A)(iii). A deadly weapon is defined as either "(A) a firearm or anything manifestly designed, made or adapted for the purpose of inflicting death or serious bodily injury; or (B) anything that in its manner of use or intended use is capable of causing death or serious bodily injury." Id. § 39-11-106(a)(5). An object that is not necessarily deadly per se, may nonetheless be deadly "if the defendant in a particular case actually used or intended to use the item to cause death or serious bodily injury." State v. McGouey, 229 S.W.3d 668, 673 (Tenn. 2007).

Citing Morgan v. State and its progeny, the Defendant argues that the baseball bat was neither a deadly weapon per se nor used in a deadly manner. 220 Tenn. 247, 252, 415 S.W.2d 879, 881-82 (1967) (concluding that instrument inside of sock used to pry open door and bludgeon victim qualified as deadly weapon by reason of the manner in which it was used). To establish a deadly weapon under subsection (a)(5)(B), the Defendant insists that the State was required to show that the use of the baseball bat was "likely to produce death or cause great bodily injury," and cannot be based on the possible use of the baseball bat. Because the Defendant put the bat down when ordered to do so, he claims his intended use had not yet "manifested itself to a sufficient degree to permit the interpretation that the bat had become a deadly weapon by its intended use." In other words, the Defendant maintains that holding a baseball bat and aiming it at the victim from twenty-feet away is insufficient as a matter of law to establish the bat as deadly weapon. We disagree.

We begin by recognizing that a baseball bat is not a deadly weapon per se because it is neither "a firearm or a weapon designed, made or adapted to expel a projectile by the action of an explosive or any device readily convertible to that use." See T.C.A. § 39-11-106(a)(11). Accordingly, we must now consider whether the baseball bat became a deadly weapon by the manner in which the Defendant used it, as contemplated by subsection (a)(5)(B). In reviewing this issue, we recognize the dictates of McGouey, which requires us to analyze subsection (a)(5)(B)'s "use or intended use" clause with a focus upon "how the object was used in the particular case." Id. at 673. We further recognize that the evidence in the record must show that the Defendant "used or intended to use" the baseball bat in a manner capable of causing serious bodily injury or death. Id. at 674.

- 4 -

Here, the proof showed that the Defendant was asked to leave the store earlier in the day following an altercation with another customer. In response, the Defendant told the victim, "[W]hen I come back, I'm gonna get you." The Defendant returned that night carrying a baseball bat. The victim and his co-worker were closing the store and locking the doors. The Defendant started to approach them with the bat, which he had raised at one point while yelling. Although neither witness could hear what the Defendant was saying, he seemed "angry." The victim felt "nervous" as the Defendant approached, thought he was going to be struck, and jumped into a friend's nearby car to avoid the Defendant. We acknowledge that the Defendant was nearly twenty feet from the victim when he brandished the bat. However, by emphasizing the distance from the victim coupled with the absence of imminent fear, the Defendant essentially argues a "zone of danger" theory, which this court has repeatedly rejected in the context of aggravated assault. See James Paris Johnson, 2010 WL 3565761, at *6 (Tenn. Crim. App. Sept.15, 2010); Bobby Joe Young, Jr., 2011 WL 6291813, at *7. In James Paris Johnson, this court reasoned that the zone of danger doctrine applied to the offense of reckless endangerment and did not apply to aggravated assault because with aggravated assault "[t]he point at issue is not whether the victim was within a certain physical area within which he might be harmed even if he was unaware of the danger, but whether his fear of imminent bodily injury was reasonable." James Paris Johnson, 2010 WL 3565761, at *6; see also State v. Thomas, No. E2013-02196-CCA-R3CD, 2014 WL 2021952, at *4 (Tenn. Crim. App. May 15, 2014).

The record clearly shows that the Defendant was approaching the victim in an aggressive manner with a baseball bat in his hand. As the Defendant did so, the victim feared that he would be struck by the Defendant and jumped into a nearby car to avoid harm. Based on the Defendant's threats to "get" the victim from earlier in the day, it was reasonable for the victim to believe that the Defendant presented a real, immediate threat to his safety. While this proof is far from overwhelming, viewing it in the light most favorable to the State as we must, we conclude that any rational juror could have found that the Defendant knowingly caused the victim to reasonably fear imminent bodily injury by the manner in which he displayed a deadly weapon, to wit: a baseball bat. He is not entitled to relief on this issue.

**II. Continuance of Sentencing.** Next, the Defendant contends that the trial court erred in granting the State a continuance beyond the 45-day limit for sentencing hearings in violation of Tennessee Code Annotated section 40-35-209(a). The Defendant claims that he was prejudiced by the delay because it enabled the State to obtain certified copies of his prior convictions thereby increasing his status from a standard to a persistent offender. In response, the State argues, and we agree, that the delay was harmless because the Defendant has failed to demonstrate prejudice.

Tennessee Code Annotated section 40-35-209(a) provides as follows:

> Before imposing sentence or making other disposition upon acceptance of a plea of guilty or upon a verdict or finding of guilty, the court shall conduct a sentencing hearing without unreasonable delay, but in no event more than forty-five (45) days after the finding of guilty, except as provided in § 40-35-209(b) relating to agreed sentences and § 40-35-203(c) relating to capital crimes. The court, upon the request of either party and with good cause shown, shall continue the sentencing hearing for a least five (5) days, but no more than thirty (30) days, after the filing of a presentence report, unless either party shows good cause for further postponement or unless these time constraints will unduly prejudice the position of either party.

"[I]t is the general rule in Tennessee that statutory provisions which relate to the mode or time of doing an act to which the statute applies are not to be mandatory, but directory only." State v. Bates, 313 S.W.3d 265, 268 (Tenn. Crim. App. 2009) (quoting State v. Jones, 729 S.W.2d 683, 685 (Tenn. Crim. App. 1986)). When a defendant seeks relief pursuant to this statute, he must also demonstrate prejudice. Id.

Here, the State had until September 16, 2016, 45 days from August 2, 2016, the date of conviction, to sentence the Defendant. Although the sentencing hearing was originally scheduled for September 9, 2016, it did not take place until November 3, 2016, 48 days beyond the statutory limit. At an interim setting, the State moved for a one-week continuance to obtain a complete set of certified copies of the Defendant's prior convictions, which were antiquated. The Defendant, desirous of proceeding as a Range I, standard offender, objected to the continuance based on the 45-day time frame for sentencing in Tennessee Code Annotated section 40-35-209. In granting the continuance, the trial court stated that it needed to review the certified copies of the Defendant's convictions to correctly sentence the Defendant. At the November 3, 2016 sentencing hearing, the State admitted certified copies of the Defendant's prior convictions into evidence, which qualified the Defendant as a persistent offender. He was then sentenced to ten years' imprisonment at forty-five percent, to be served consecutively to a prior life sentence.

Upon our review, we conclude that the Defendant has failed to show that he was prejudiced by the 48-day delay. The Defendant insists he was prejudiced because the State was able to increase his offender status by obtaining certified copies of his prior convictions during the delay. We disagree. Almost a year before his trial, on October 7, 2015, the State filed its notice to seek enhanced punishment based on eight of the Defendant's prior felony convictions, including three life sentences. Additionally, on

August 25, 2016, the presentence report which also included the Defendant's prior convictions was submitted to the parties and the court. The Defendant was on notice of his offender status well before the 48-day delay in this case. Accordingly, we conclude that any error in violating the statute was harmless because the Defendant has failed to demonstrate prejudice. He is not entitled to relief.

**III. Ineffective Assistance of Counsel.** Finally, the Defendant claims he received ineffective assistance of counsel. In response, the State argues that this issue has been waived. Without belaboring the point, the Defendant raised a general claim of ineffective assistance of counsel in his motion for a new trial. His motion did not include **_any_** issues pertaining to trial counsel's performance or facts in support of this claim.[2] As such, this court is unable to determine upon what grounds the Defendant challenges trial counsel's performance, and we decline to engage in an exploratory expedition of the motion for new trial hearing to refine his claim. Accordingly, we decline to review this issue.

## CONCLUSION

Based upon the foregoing reasoning and analysis, we affirm the judgments of the trial court.

_____
CAMILLE R. MCMULLEN, JUDGE

---

[2] The issue as presented in his motion for new trial is as follows:

> [The Defendant] received ineffective assistance of counsel prior to and during his trial in violation of his 6th Amendment and Article 1§ 7 right to assistance of counsel. Mr. Fisher has been advised about the disadvantages of raising this particular issue in this proceeding and wishes to proceed nonetheless.