IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs September 24, 2024

**STATE OF TENNESSEE v. RICKY REX CORLEW**

**Appeal from the Criminal Court for Hancock County**
No. 22CR044    Alex E. Pearson, Judge
———————————————————

**No. E2023-00831-CCA-R3-CD**
———————————————————

A Hancock County Criminal Court jury convicted the defendant, Ricky Rex Corlew, as charged of allowing a dog to run at large causing serious bodily injury, a Class E felony. See Tenn. Code Ann. § 44-8-408(b), (g)(4) (Supp. 2021). Following a sentencing hearing, the trial court ordered Corlew to serve two years in confinement and to pay the $3000 fine set by the jury. On appeal, Corlew argues that the evidence is insufficient to sustain his conviction because it supported his affirmative defense that he exercised reasonable care in attempting to confine or control his dog. After review, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

CAMILLE R. MCMULLEN, P.J., delivered the opinion of the court, in which ROBERT H. MONTGOMERY, JR., and JILL BARTEE AYERS, JJ., joined.

Jessica F. Butler, Assistant Public Defender – Appellate Division (on appeal); Todd Estep, District Public Defender; and Roland E. Cowden, Assistant Public Defender (at trial), for the appellant, Ricky Rex Corlew.

Jonathan Skrmetti, Attorney General and Reporter; Christian N. Clase, Assistant Attorney General; Dan E. Armstrong, District Attorney General; and Bradley R. Jones, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

On March 8, 2022, Corlew's pit bull escaped from its chicken-wire fence and attacked seventy-three-year-old Dorlene Ramsey. On June 13, 2022, the Hancock County Grand Jury charged Corlew by presentment with one count of allowing a dog to run at large causing serious bodily injury, a Class E felony.

At trial, the victim, Dorlene Ramsey, testified that she had arrived early to her aerobics class and decided to take a short walk before class began.  As she walked down the road, she noticed Corlew's pit bull behind a fence in his yard on the other side of the street.  She knew Corlew's dog was a pit bull because she feared that dog breed; however, she did not pay the dog much attention or provoke it.  The victim noted that Corlew's pit bull was behind what appeared to be a chicken-wire fence, which "wasn't a good fence, not for a dog like that."  She did not recall the height of this fence.

After walking past Corlew's home, the victim eventually turned around and began to walk back to her aerobics class.  When she passed by Corlew's home a second time, his pit bull remained behind the fence.  She stated that two smaller dogs, that she thought also belonged to Corlew, had gone under his fence and were standing in the road.

An instant later, the pit bull "jumped on [the victim] with all fours and knocked [her] backward[]."  The victim did not know how this dog escaped.  She thought the pit bull jumped over the fence, although Corlew later informed her that his pit bull had gone "under the fence before."  The victim was unsure whether the dog escaped by going under the fence this time because the dog did not make any noise when it escaped.

As the victim lay on the ground, the pit bull gnawed on her stomach and bit into her leg, close to her main artery.  At one point, the pit bull even "tr[ied] to get to [her] throat."  When the victim attempted to push the pit bull off and punch at its eyes, the dog bit "through [her] thumb and blood [ran] everywhere."  The dog also "scratched [her] nose."  As she was being attacked by the pit bull, the victim screamed for help.  Corlew and his neighbor ran to her, and both men worked together to get the pit bull off her.  The victim said she would not have been able to fight the dog off on her own.

Just after Corlew gained control of the pit bull, "he turned it loose, and [the dog] started to get to [the victim] again."  The victim got mad and demanded that Corlew grab his dog.  When she was finally able to leave, the victim stopped at the jail on her way to the hospital so she could report the incident.  She then went directly to the emergency room for treatment of her injuries, which caused her extreme pain, required several stitches, and made it nearly impossible for her to walk.  The victim explained that she had to see a wound doctor every week for three months for her injuries.  During that time, she was afraid she would have to have surgery for a staph infection that developed in her wounds.  A photograph of the victim's extensive injuries was admitted as an exhibit at trial.  As of the time of trial, the victim said she still had bad scars down her entire leg from the attack, and her leg had turned blue from the knee up.

On cross-examination, the victim stated that she did not see Corlew when she passed by his dog the second time. She said she was unsure whether the pit bull "went under the fence or over the fence or how it got to [her]."

On redirect examination, the victim confirmed that the large dog behind the fence was the same dog that attacked her.

Deputy Logan Parks with the Hancock County Sheriff's Department testified that he went to the hospital to see the victim as a part of his investigation. When he first encountered the victim, he observed that she had "multiple wounds" down her entire body. The victim told him what happened with Corlew's dog, and Deputy Parks shared that he had been to Corlew's residence before and had seen a dog that matched the victim's description there. Deputy Parks agreed that Corlew's pit bull was responsible for the victim's injuries based on his familiarity with that dog, the victim's description of the incident, and the nature of her injuries.

Linda Hammett, a retired veterinary assistant, testified that she routinely cared for Corlew's pit bull named Boots at the veterinary clinic. She first saw Boots in 2017 and saw the dog for the last time when they had to euthanize her. When Hammett went to the site where Boots was held after the incident, she brought her twelve-year-old granddaughter with her, and Boots was "always friendly" and "never showed aggression," even on the day the dog was euthanized. Hammett said that even at the veterinary clinic, she never saw Boots act aggressively with other dogs. She said that Corlew had always owned pit bulls but had never had "an aggressive pit bull" and that Boots was no different.

On cross-examination, Hammett stated that "if a dog is backed in a corner [or] feels threatened, a dog can bite." She then added, "Any dog can bite."

The jury convicted Corlew as charged. Following a sentencing hearing, the trial court determined that Corlew was a Range I, standard offender and ordered him to serve two years in confinement and to pay the $3000 fine set by the jury.

Thereafter, Corlew timely filed a motion for new trial, alleging in pertinent part that the evidence supported his affirmative defense that he exercised reasonable care in attempting to confine or control his dog. The trial court denied the motion for new trial, and Corlew timely filed a notice of appeal.

## ANALYSIS

Corlew argues that the evidence is insufficient to sustain his conviction for allowing a dog to run at large causing serious bodily injury. Specifically, he claims that because the

proof showed he kept his dog behind a fence in his yard, no rational jury could have rejected his affirmative defense that he exercised reasonable care in attempting to confine or control his dog. He also asserts that because he did not have prior knowledge that his pit bull was dangerous, he "cannot be expected to take extraordinary steps to confine" his dog. Corlew urges this court to interpret "reasonable care" pursuant to civil doctrines in negligence cases, and he maintains that because his efforts to confine his dog were reasonable, this court should reverse and vacate his conviction. In response, the State contends that Corlew failed to prove his affirmative defense because his only confinement method was a chicken-wire fence, from which the dog had previously escaped. We conclude that because the record supports the jury's rejection of Corlew's affirmative defense, the evidence is sufficient to sustain his conviction.

"Because a verdict of guilt removes the presumption of innocence and raises a presumption of guilt, the criminal defendant bears the burden on appeal of showing that the evidence was legally insufficient to sustain a guilty verdict." State v. Hanson, 279 S.W.3d 265, 275 (Tenn. 2009) (citing State v. Evans, 838 S.W.2d 185, 191 (Tenn. 1992)). "Appellate courts evaluating the sufficiency of the convicting evidence must determine 'whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" State v. Wagner, 382 S.W.3d 289, 297 (Tenn. 2012) (quoting Jackson v. Virginia, 443 U.S. 307, 319 (1979)); see Tenn. R. App. P. 13(e). When this court evaluates the sufficiency of the evidence on appeal, the State is entitled to the strongest legitimate view of the evidence and all reasonable inferences that may be drawn from that evidence. State v. Davis, 354 S.W.3d 718, 729 (Tenn. 2011) (citing State v. Majors, 318 S.W.3d 850, 857 (Tenn. 2010)).

Guilt may be found beyond a reasonable doubt where there is direct evidence, circumstantial evidence, or a combination of the two. State v. Sutton, 166 S.W.3d 686, 691 (Tenn. 2005); State v. Hall, 976 S.W.2d 121, 140 (Tenn. 1998). The standard of review for sufficiency of the evidence "'is the same whether the conviction is based upon direct or circumstantial evidence.'" State v. Dorantes, 331 S.W.3d 370, 379 (Tenn. 2011) (quoting Hanson, 279 S.W.3d at 275). The jury as the trier of fact must evaluate the credibility of the witnesses, determine the weight given to witnesses' testimony, and reconcile all conflicts in the evidence. State v. Campbell, 245 S.W.3d 331, 335 (Tenn. 2008) (citing Byrge v. State, 575 S.W.2d 292, 295 (Tenn. Crim. App. 1978)). Moreover, the jury determines the weight to be given to circumstantial evidence, and the inferences to be drawn from this evidence, and the extent to which the circumstances are consistent with guilt and inconsistent with innocence, are questions primarily for the jury. Dorantes, 331 S.W.3d at 379. When considering the sufficiency of the evidence, this court "neither re-weighs the evidence nor substitutes its inferences for those drawn by the jury." Wagner, 382 S.W.3d at 297 (citing State v. Bland, 958 S.W.2d 651, 659 (Tenn. 1997)).

As charged in this case, "[t]he owner of a dog commits an offense if that dog goes uncontrolled by the owner . . . upon a highway, public road, street or any other place open to the public generally." Tenn. Code Ann. § 44-8-408(b) (Supp. 2021). This offense is a Class E felony if the dog causes serious bodily injury to another. Id. § 44-8-408(g)(4) (Supp. 2021). Serious bodily injury includes injury that involves extreme physical pain, protracted or obvious disfigurement, and protracted loss or substantial impairment of a function of a bodily member, organ or mental faculty. Id. § 39-11-106(a)(37) (Supp. 2021). "It is an affirmative defense to prosecution . . . that the dog owner exercised reasonable care in attempting to confine or control the dog." Id. § 44-8-408(f) (Supp. 2021). "[T]he defendant has the burden of raising the issue and proving, by a preponderance of evidence, the existence of the affirmative defense." Id. § 39-11-204, Sentencing Comm'n Cmts; see 7 Tenn. Prac. Pattern Jury Instr. T.P.I.–Crim. 12.06. This affirmative defense is "[i]ncluded in the defendant's plea of not guilty[.]" 7 Tenn. Prac. Pattern Jury Instr. T.P.I.–Crim 12.06. If the jury determines that the defendant has proven the affirmative defense by a preponderance of the evidence, then the jury must find the defendant not guilty of allowing a dog to run at large causing serious bodily injury. Id.; see State v. Parris, 236 S.W.3d 173, 188 (Tenn. Crim. App. 2007).

The evidence, when viewed in the light most favorable to the State, is sufficient to establish the elements of the charged offense. To reiterate, this offense is a Class E felony if (1) the defendant was the owner of a dog; (2) the dog went uncontrolled by the defendant upon a highway, public road, street or any other place open to the public generally; and (3) the dog caused serious bodily injury to another. Tenn. Code Ann. § 44-8-408(b), (g)(4); 7 Tenn. Prac. Pattern Jury Instr. T.P.I.–Crim 12.06. In this case, the evidence showed that Corlew's pit bull escaped his chicken-wire fence, from which it had previously escaped; went uncontrolled onto a public road; and attacked the victim, biting her several times on her stomach and leg, nearly hitting an artery, scratching her face, and biting through the victim's thumb. The victim's injuries required stitches and three months of wound care, caused the victim extreme pain, made it nearly impossible for her to walk, and caused extensive scarring. Although Corlew's argument focuses on the claim that he exercised reasonable care in confining his dog, we conclude the evidence presented at trial is more than sufficient to establish the elements of this offense.

Corlew specifically claims the jury erred in rejecting his affirmative defense that he exercised reasonable care in attempting to confine or control his pit bull. However, Corlew had the burden of proving this affirmative defense by a preponderance of the evidence. Tenn. Code Ann. § 39-11-204, Sentencing Comm'n Cmts. Corlew's claim that he exercised reasonable care in confining his pit bull is based on proof that (1) he attempted to confine his pit bull with a chicken-wire fence, and (2) his pit bull was "friendly." Although Corlew admits "there were perhaps better methods of confining [his pit bull] to

the yard," he argues "[h]e was only required to take the most basic, plausible action." After carefully evaluating the record, we conclude it supports the jury's rejection of Corlew's affirmative defense.

First, Corlew argues that he exercised reasonable care by attempting to confine his pit bull behind a chicken-wire fence. He claims that because his dog had no history of violence, he "took reasonable steps to confine his dog." He also asserts that although his efforts were "ultimately insufficient," insufficient efforts to confine the dog are "not the standard by which this Court should review this case." At trial, the victim testified that Corlew's fence, which appeared to be made of chicken-wire, "wasn't a good fence, not for a dog like that," especially because Corlew admitted that his dog had gone "under the fence before." The proof also suggests that the fence may not have been sufficiently tall to confine Corlew's pit bull. Although the victim could not recall the height of this fence, she believed the pit bull jumped the fence because the dog escaped so quietly. Because the proof showed that Corlew's pit bull had escaped from his fence on previous occasions and that the fence was made of inadequate materials, a rational jury could have found that Corlew failed to prove, by a preponderance of the evidence, that he exercised reasonable care in confining his pit bull. After reviewing the record, we conclude that the record fully supports the jury's rejection of this affirmative defense.

Second, as for Corlew's claim that he exercised reasonable care in confining his pit bull with a chicken-wire fence because the dog was "friendly" and he had no prior knowledge that the dog was dangerous, we emphasize that the jury heard Linda Hammett's testimony about the dog's demeanor, but the jury ultimately rejected Corlew's affirmative defense after hearing all the proof presented at trial. We note that the statute increases the penalty for this charged offense to a Class D felony if the dog owner "knew of the dangerous nature of the dog and, prior to the violation of this section, the dog had bitten one (1) or more people that resulted in serious bodily injury or death." Id. § 44-8-408(h)(2), (i)(4). This increased penalty strongly suggests that the General Assembly intended for the possibility that a person committing the offense of allowing a dog to run at large causing serious bodily injury to be guilty of a Class E felony, even if the dog owner did not have previous knowledge that the dog was dangerous. Moreover, the statute clearly states that the only affirmative defense to prosecution is if the dog owner exercised reasonable care in attempting to confine or control his dog. Id. § 44-8-408(f). We have already concluded that the record supports the jury's rejection of Corlew's affirmative defense, especially given the proof regarding the fence's condition and the evidence that his pit bull had escaped that fence on a prior occasion.

Finally, we address Corlew's suggestion that this court consider civil doctrines addressing reasonable care in the context of negligence cases when deciding his criminal case. Corlew asserts that in cases like this, "where criminal law is ill-defined due to a lack

of relevant case law, it is not only reasonable to consider more robust civil doctrines, it is required." We disagree. The natural and ordinary meaning of the term "reasonable care" in the affirmative defense is clear. See State v. Fayne, 451 S.W.3d 362, 370 (Tenn. 2014) (holding that because the employment of a firearm statute did not provide a definition for "employ," the court had to apply "the natural and ordinary meaning of the words in the statute to give effect to the legislative intent"). Here, the natural and ordinary meaning of the term "reasonable care" is "the degree of care that a prudent and competent person engaged in the same line of business or endeavor would exercise under similar circumstances." Black's Law Dictionary (12th ed. 2024). We believe a rational jury would have easily understood the natural and ordinary meaning of the term "reasonable care" as used in the affirmative defense for this crime. Accordingly, there is no need to resort to civil case law to determine the meaning of "reasonable care" as it is used here. Because a rational jury could have determined that Corlew failed to prove his affirmative defense by a preponderance of the evidence, he is not entitled to relief.

_____
CAMILLE R. MCMULLEN, PRESIDING JUDGE