IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON

Assigned on Briefs February 2, 2016

## STATE OF TENNESSEE v. NICHOLAS GRACE

**Appeal from the Criminal Court for Shelby County**
No. 1203064    James C. Beasley, Jr., Judge

———————————————————

### No. W2015-01177-CCA-R3-CD  -  Filed April 29, 2016

———————————————————

The Defendant, Nicholas Grace, was convicted by a Shelby County jury of aggravated robbery, a Class B felony.  See T.C.A. § 39-13-402.  The sole issue presented for our review is whether the evidence is sufficient to sustain the conviction.  Upon review, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

CAMILLE R. MCMULLEN, J., delivered the opinion of the court, in which JOHN EVERETT WILLIAMS and TIMOTHY L. EASTER, JJ., joined.

Micah Jay Gates (on appeal) and Paul K. Guibao (at trial), Memphis, Tennessee, for the Defendant-Appellant, Nicholas Grace.

Herbert H. Slatery III, Attorney General and Reporter; Jeffrey D. Zenter, Assistant Attorney General; Amy P. Weirich, District Attorney General; and Stacy McEndree and Meghan Fowler, Assistant District Attorneys General, for the Appellee, State of Tennessee.

### OPINION

While walking home from a high school awards ceremony on November 22, 2011, the victim in this case, Quatereus Macklin, was robbed at gunpoint by two men.  The Defendant, a nineteen-year old senior in high school, provided a detailed statement to police admitting to his involvement in this offense.  Although the Defendant denied being armed with a weapon, he corroborated the victim's account of the offense including the description of the car driven by the perpetrators, the type of gun held by his compatriot, and the type of cell phone that was taken from the victim.  The Defendant was subsequently indicted for aggravated robbery and a trial commenced on January 5, 2015.

At trial, the victim testified that he left the awards ceremony alone and on foot sometime around 9:00 p.m. He was on his cell phone with his mother when a white Nissan Altima pulled up and two males he did not recognize approached him. The two men were armed with guns and demanded the victim's money. The victim said that one man carried a silver and black handgun and pointed it at his face. The other man, later identified as the Defendant, was holding an assault rifle that "was big enough for [him] to hold it with two hands." The victim dropped his wallet and cell phone, a Cricket ZTE with orange and black buttons, and emptied his pockets. The Defendant then pointed the rifle at the victim's chest and told him to "run before I shoot you in your back." As the victim ran away, he looked back and observed one of the perpetrators pick up his phone before both men jumped back into their car.

After the perpetrators left, the victim returned to where he had been standing and found his wallet on the ground and his ID and cards lying on the sidewalk. He gathered his belongings, met his mother, and told her about the robbery. The victim and his mother called his phone on speaker and someone answered and said, "[Y]eah, we took something, you know what this is. This is gold star mafia. We boosting up the murder rate." The victim's mother called the police, and upon their arrival, the victim provided a description of the offense, the perpetrators, and their car. The police transported the victim to an after party, which was located close to the scene of the robbery, because they believed the perpetrators may have been present. As they approached the parking area outside the party, the victim immediately identified the white Nissan Altima driven by the perpetrators. After the police secured the car, they escorted the victim into the party. The victim then immediately identified the Defendant as the perpetrator who was holding the assault rifle.

The victim testified that there was no doubt in his mind that the Defendant was one of the men who robbed him, and he was certain that the Defendant was wearing a red and black jacket during the robbery. The victim's cell phone, which was never recovered, was valued at $180. He said that he only gave the perpetrators his phone because he thought they were going to shoot him and that he was scared when the robbery took place. The victim conceded that it was dark outside at the time of the robbery and that it lasted only three to four minutes. Neither a rifle nor the victim's cell phone was recovered from inside the white Nissan Altima.

Officer Roger Emmerson of the Memphis Police Department responded to the robbery, picked up the victim, and drove him to the party. The officer confirmed that the white Nissan Altima was parked outside the party near the location of the robbery. He noted that, upon arrival, the victim identified the car and the perpetrators, who were immediately detained and taken into custody. Demar Wells, a crime scene investigator with the Memphis Police Department, photographed and searched the white Nissan

Altima parked outside the party. He collected evidence from inside the vehicle, which included a Sprint LG cell phone, one spent .25-caliber casing, and a loaded nine-millimeter semiautomatic handgun. He described the handgun, which was introduced as evidence at trial, as a "Jimenez Arms gray with black handle nine millimeter semiautomatic[.]" He noted that the spent .25-caliber Winchester casing did not match the handgun and was fired by a different weapon. Investigator Wells confirmed that no rifle, jackets, or additional cell phones were found during his search.

Sergeant John Simpson of the Memphis Police Department took a written statement from the Defendant on November 23, 2011. He reviewed the report of the robbery before the interview began, which indicated that the Defendant was nineteen years old and a senior at a local high school. The Defendant was advised of his <u>Miranda</u> rights and signed an acknowledgement form prior to giving a statement. The Defendant claimed "that he had been with the wrong people, the wrong place, the wrong time." Sergeant Simpson noted that "there wasn't a lot of general conversation because . . . [the Defendant] confessed straight out . . . there was no denial[.]" After the statement was typed, the Defendant was given the opportunity to review it and make any changes before signing it. The signed statement was introduced into evidence and read to the jury at trial. The relevant portion of the statement was as follows:

> Q:    Did you participate in the incident which occurred at 4851 Elvis Presley, on Tuesday, November 22, 2011 at approximately 9:20 p.m.?
>
> A:    Yes sir.
>
> . . . .
>
> Q:    Did anyone else participate in this incident with you, if so, name them?
>
> A:    Yes sir, Eric, I don't know his last name, Cameron was driving the car and Eddie just stayed in the car.
>
> Q:    What was Eric wearing during the incident?
>
> A:    He was wearing a white jacket, I was not paying attention to what he was wearing.
>
> . . . .

Q:	What were you wearing during the incident?

A:	I had on some green shoes, black jeans, navy blue and green plaid shirt, I had on a brown and green jacket.

Q:	Were you armed with a weapon, if so, describe it?

A:	No sir.

Q:	Was anyone else armed with a weapon, if so, describe it?

A:	Yes sir, Eric.  It was small to medium size.  It was probably like grey.  It was about the size of his hand.

	. . . .

Q:	What was taken in this incident?

A:	A cell phone.  It was a Cricket, I think.

Q:	Who took the cell phone from the victim?

A:	Eric.

Q:	What did you receive from this incident?

A:	Nothing.

	. . . .

Q:	Was a vehicle used during this incident, if so, describe the vehicle?

A:	Yes sir.  It was a white Altima or Maxima.

	. . . .

Q:	Describe, in detail, the events prior to, during and after this incident?

A:	Keyambi called Cameron to come to the Red Oaks to pick me up. About ten to fifteen minutes later, Cameron pulled up.  Eric and Eddie was with Cameron.  I got in and we went to the awards at

Whitehaven school. We left there and rode down the street and Eric said stop the car that he saw somebody walking down the street. Eric was like I am fixing to go get him. Eric got out of the car and I got out with him and we walked up to the guy and Eric pulled the gun out and told the guy to give him everything. The guy said that he did not have anything but his phone and he threw the phone on the ground. Eric picked the phone up and we went back to the car and drove off.

. . . .

Q:     Why did you participate in this incident?

A:     I was not thinking. I went to just go see what we were going to do.

Q:     Who planned this incident?

A:     Eric.

Q:     Were you forced in any way or by anyone to participate in this incident?

A:     No sir.

Before the close of proof in this case, the parties stipulated that when the Defendant was released, jail records showed that he had a green and brown jacket. The Defendant was convicted as charged and sentenced as a Range I, standard offender to an agreed term of nine years at eighty-five percent to be served in the Department of Correction. This sentence was to be served consecutively to another unrelated case. After the denial of his motion for new trial, the Defendant filed a timely notice of appeal. This appeal followed.

## ANALYSIS

The Defendant argues that the evidence was insufficient to support his conviction for aggravated robbery. Although he concedes that an aggravated robbery occurred in his presence, he maintains that he did not participate in the offense and that he was not armed when it took place. He acknowledges that the jury credited the victim's testimony; however, he asserts that the victim's story was contradicted by physical evidence, and his conviction was therefore improper. Upon review, we conclude that the evidence was sufficient to sustain the aggravated robbery conviction.

When a defendant challenges the sufficiency of the evidence, the standard of review applied by this court is "whether, after reviewing the evidence in the light most favorable to the prosecution, <u>any</u> rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." <u>Jackson v. Virginia</u>, 443 U.S. 307, 319 (1979). Similarly, Rule 13(e) of the Tennessee Rules of Appellate Procedure states, "Findings of guilt in criminal actions whether by the trial court or jury shall be set aside if the evidence is insufficient to support the finding by the trier of fact of guilt beyond a reasonable doubt." When considering the sufficiency of the evidence on appeal, the State is entitled to the strongest legitimate view of the evidence and all reasonable inferences which may be drawn from that evidence. <u>State v. Davis</u>, 354 S.W.3d 718, 729 (Tenn. 2011) (citing <u>State v. Majors</u>, 318 S.W.3d 850, 857 (Tenn. 2010)). "Because a verdict of guilt removes the presumption of innocence and raises a presumption of guilt, the criminal defendant bears the burden on appeal of showing that the evidence was legally insufficient to sustain a guilty verdict." <u>State v. Hanson</u>, 279 S.W.3d 265, 275 (Tenn. 2009).

Guilt may be found beyond a reasonable doubt where there is direct evidence, circumstantial evidence, or a combination of the two. <u>State v. Matthews</u>, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990) (citing <u>State v. Brown</u>, 551 S.W.2d 329, 331 (Tenn. 1977); <u>Farmer v. State</u>, 343 S.W.2d 895, 897 (Tenn. 1961)). The standard of review for sufficiency of the evidence "'is the same whether the conviction is based upon direct or circumstantial evidence.'" <u>State v. Dorantes</u>, 331 S.W.3d 370, 379 (Tenn. 2011) (quoting <u>State v. Hanson</u>, 279 S.W.3d 265, 275 (Tenn. 2009)). The jury as the trier of fact must evaluate the credibility of the witnesses, determine the weight given to witnesses' testimony, and reconcile all conflicts in the evidence. <u>State v. Campbell</u>, 245 S.W.3d 331, 335 (Tenn. 2008) (citing <u>Byrge v. State</u>, 575 S.W.2d 292, 295 (Tenn. Crim. App. 1978)). Moreover, the jury determines the weight to be given to circumstantial evidence and the inferences to be drawn from this evidence, and the extent to which the circumstances are consistent with guilt and inconsistent with innocence are questions primarily for the jury. <u>Dorantes</u>, 331 S.W.3d at 379 (citing <u>State v. Rice</u>, 184 S.W.3d 646, 662 (Tenn. 2006)). When considering the sufficiency of the evidence, this court shall not reweigh the evidence or substitute its inferences for those drawn by the trier of fact. <u>Id.</u>

Robbery "is the intentional or knowing theft of property from the person of another by violence or putting the person in fear." T.C.A. § 39-13-401(a). As relevant to the present case, aggravated robbery is a robbery that is "[a]ccomplished with a deadly weapon or by display of any article used or fashioned to lead the victim to reasonably believe it to be a deadly weapon." <u>Id.</u> § 39-13-402(a)(1).

The Defendant specifically argues that he cannot be criminally responsible for the conduct of his compatriot, who planned the robbery and pointed the gun at the victim. We need not determine whether the Defendant was criminally responsible for the conduct of another because the victim in this case testified that both perpetrators exited the white Nissan Altima, approached him armed with guns, and demanded his money. Although the Defendant argues that the physical evidence contradicts the victim's testimony because no rifle was recovered from the white Nissan Altima and the victim misidentified the color of his jacket, these facts or inconsistencies do not preclude a finding of guilt. The victim was certain that the Defendant was the perpetrator with the assault rifle who threatened to shoot him in the back because the victim did not have any money. The Defendant also gave a statement to the police admitting that he was present when the robbery occurred and that the victim's phone was taken from the scene. The jury chose not to believe Defendant's version of his role in the robbery, as was their prerogative. Viewed in the light most favorable to the State, a reasonable juror could have found the Defendant guilty of aggravated robbery beyond a reasonable doubt. Accordingly, the Defendant is not entitled to relief.

## CONCLUSION

Based on the above analysis, the judgment of the trial court is affirmed.

_____
CAMILLE R. McMULLEN, JUDGE

-7-